# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

JENNIFER BREAR BRINKER,

Plaintiff,

v.

AXOS BANK, et al.,

Defendants.

Case No. 22-cv-386-MMA (DDL)

**ORDER (1) GRANTING MOTION TO DISMISS; AND (2) DENYING AS MOOT MOTION TO STRIKE**

[Doc. Nos. 13, 14]

Plaintiff Jennifer Brear Brinker ("Plaintiff") brings this whistleblower retaliation action against Defendants Axos Bank, Axos Financial Inc. ("Axos Financial"), John Tolla, Eshel Bar-Adon, and Tom Constantine (collectively, "Defendants"). *See* Doc. No. 4 ("First Amended Complaint" or "FAC"). Defendants Axos Bank, John Tolla, Eshel Bar-Adon, and Tom Constantine move to dismiss Plaintiff's first, third, fourth, fifth, sixth, and eighth cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 13. Defendant Axos Financial Inc. moves to dismiss all causes of action against it. *See id.* Defendants also move to strike paragraph 96 in the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). *See* Doc. No. 14. Plaintiff filed an opposition to Defendants' motion to dismiss, to which Defendants replied. *See* Doc. Nos. 23, 25. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b)

and Civil Local Rule 7.1.d.1.  *See* Doc. No. 26.  For following reasons, the Court **GRANTS** Defendants' motion to dismiss and **DENIES AS MOOT** Defendants' motion to strike.[1]

# I. BACKGROUND[2]

In October 2018, Plaintiff was hired by Axos Bank as a Senior Independent Credit Review Officer for the Governance, Risk Management, and Compliance Department. FAC ¶ 12.  Plaintiff was responsible for reviewing Axos Bank's loan portfolios to examine, measure, monitor and report weaknesses and deficiencies with the Bank's lending and risk management standards and practices.  *Id.*  Broadly, Plaintiff alleges that Axos Bank intentionally understaffs its compliance departments and hires inexperienced and under-qualified compliance personnel in an effort to conceal its failure to comply with federal banking regulations, safe and sound banking practices, and its own policies. *Id.* ¶ 1.  Plaintiff further alleges that she uncovered a dizzying array of compliance and risk-management issues that had previously been "overlooked," or "undetected" and that she faced consistent hostility from management, improper efforts to dilute her findings, and retaliation for being honest about the state of the Bank's internal controls and compliance efforts.  *Id.* ¶ 3.

## A.    Correspondent Lending Review

In November 2018, Plaintiff began review of Axos Bank's "Correspondent Lending" portfolio.  *Id.* ¶ 18.  Corresponding Lending ("CL") is a third-party lending

---

[1] The Court concludes that Plaintiff has exhausted her ability to amend once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) and therefore considers the instant motion to dismiss and motion to strike.  *See* Doc. Nos. 27, 28, 29; *see also Estate of Nunez v. County of San Diego*, No. 16-cv-1412-BEN-MDD, 2017 U.S. Dist. LEXIS 108183, at *10–13 (S.D. Cal. July 10, 2017) (concluding that plaintiffs needed leave from the court to amend their complaint as "Plaintiffs have failed to demonstrate they obtained *all of the opposing parties' written consent* to amend their complaint[.]") (emphasis added).

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the First Amended Complaint.  *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

product where Axos Bank serves as lender of record for non-Bank entities that cannot extend loans in their own names. *Id.* Plaintiff asserts she uncovered numerous problems with the CL program during her review, including problems with internal financial controls, compliance with AML best practices, failure to monitor compliance with lending guidelines, failure to monitor program risk factors pursuant to a directive from the Bank's primary regulator, systematic financial and credit formula errors, and failure to monitor and accurately report borrower creditworthiness. *Id.* ¶ 19.

Plaintiff created a draft report containing her critiques, but was told to "socialize" the report findings with the business unit and senior management in a series of meetings. *Id.* ¶ 26. Management refused to provide any commentary or plans to remediate the deficiencies. *Id.* The executive manager (and Chief Legal Officer), Eshel Bar-Adon, refused to acknowledge the deficiencies. *Id.* As a result of Defendant Bar-Adon's delay, the many "socialization" discussions, and the many management edits, the report was more than four months late and was significantly watered down before it was presented to the Board of Directors and released to the OCC. *Id.*

Plaintiff alleges that, after finally negotiating remediation plans with senior management, Plaintiff continued communicating with CL personnel who ignored her remediation efforts and reminders, so the audit records repeatedly became past due during 2019. *Id.* ¶ 29. By early 2020, Axos's Chief Risk Officer instructed Plaintiff to host daily meetings with the CL business unit to close out several past-due findings. *Id.* ¶ 30. Plaintiff was thwarted by Defendant Bar-Adon who criticized her for being "too bureaucratic" when she sought to establish accurate and effective risk management practices relevant to a customer shared with another business unit that held an $87.5 million credit line from the Bank. *Id.*

**B.   Equipment Finance Portfolio**

While still attempting to negotiate her findings from the review of the Correspondent Lending Portfolio, Plaintiff embarked on a review of Axos's Equipment Finance ("EQF") Portfolio that represented approximately $150M in lending assets at the

time.  *Id.*  ¶ 31.  Plaintiff asserts she uncovered a variety of issues, including concerns regarding underwriting standards, accounting problems, and improper risk ratings.  *See id.* ¶¶ 32–37.

Plaintiff alleges that, during the EQF ICR "exit meeting" with Chief Credit Officer Tom Constantine to review her draft report, he attacked her findings, attacked the scope of the report, and attacked Plaintiff's recommendations to improve the credit underwriting policies and risk rating criteria.  *Id.* ¶ 38.  Defendant Constantine demanded that Plaintiff rewrite the report as he was unwilling to provide any of the required management responses to remediate credit deficiencies or findings presented in the draft report.  *Id.*  Management at the Bank ultimately delayed and watered down the ICR report relating to the Equipment Finance Portfolio over Plaintiff's objections.  *Id.* Plaintiff was later told the EQF business unit thought she was "crazy."  *Id.*

**C.    Warehouse Lending Review**

After her Equipment Finance Review, Plaintiff started a review of the Warehouse Lending Portfolio, which represented approximately $430 million in lending assets at the time.  As with her other reviews, Plaintiff asserts she uncovered a host of problems, including a lack of skilled credit analysts, underwriting and AML deficiencies, improper risk ratings and covenant monitoring, insider dealing and investor fraud, and improper report of out of compliance loans.  *See id.* ¶¶ 41–47, 49–53.

Plaintiff alleges that she raised all these concerns with management and prepared a draft report.  *Id.* ¶ 48.  Her draft report was watered down and delayed by management during the "socializing" process through edits made over Plaintiff's objections.  *Id.*  Even so, her final report contained nine negative findings that were significant enough to be escalated to the Board of Directors.  *See id.*

**D.    The Board Expresses Concern Over Plaintiff's Findings**

In January of 2020 Plaintiff was told to work full-time on remediating the findings that she had put in her reports because the Board of Directors was concerned with the number of findings that she had issued and the lack of remediation progress by the Bank.

*Id.* ¶ 54.  Many of the remediation periods were again extended because of the Bank's refusal to resolve these issues.  *Id.* ¶ 55.  Plaintiff repeatedly complained about the length of time involved in remediating her findings.  *Id.*

**E.    Lender Finance Review**

Plaintiff started her report on Axos's Lender Finance Portfolio in April of 2020. Plaintiff asserts she immediately discovered that Axos had not resolved many of the issues raised in her prior ICR report, including issues related to loan monitoring and administration.  *Id.* ¶ 56.  She also discovered a number of other problems with the credit approval process and monitoring of loans.  *Id.* ¶ 57.

In July 2020, Plaintiff circulated a draft of her Lender Finance report.  *Id.* ¶ 59. There were at least eight draft versions circulated and Plaintiff expressed concern over the management involvement.  *Id.*  But even with management interference, the final report contained eleven negative findings about gaps in internal controls, documentation, reporting, collateral monitoring, risk ratings and credit administration.  *Id.*

**F.    Plaintiff's HR Complaint and First "Severance" Offer**

Plaintiff alleges that, as a result of Plaintiff's vigorous efforts to perform her job, she was faced with hostility at Axos.  *Id.* ¶ 60.  She was repeatedly told that she was "too negative" and needed to "lower her standards[,]" and she was also given unfairly negative performance reviews.  *Id.*  "Faced with hostility to her work and retaliation, Plaintiff complained about retaliation and other issues to HR in October of 2020.  *Id.* ¶ 61.

In early November, the Executive Vice President of Human Resources, Mary Ellen Ciafardini, told Plaintiff that she had found "no merit" to the complaints and that Plaintiff had to "solve" the problem because "it couldn't go on like this any longer."  *Id.* ¶ 62.  Ms. Ciafardini indicated that Plaintiff would have to leave the Bank, asking what kind of severance would make her happy to leave and asking her to propose a severance in return for a full release of any claims against the Bank.  *Id.*  Two days after this meeting, Ms. Ciafardini called Plaintiff back to reiterate the offer to leave Axos and asked Plaintiff to "let her know" what it would take to get her to leave Axos.  *Id.* ¶ 63.

**G.     Warehouse Lending Supplemental Report**

In or around September of 2020, Plaintiff and her colleague, Anthony Maniscalco began working on a 2020 Warehouse Lending Portfolio audit. *Id.* ¶ 64.  Plaintiff asserts that she and Mr. Maniscalco both raised significant concerns regarding compliance with AML laws and procedures, including failure to collect information on beneficial owners, failure to assess the strength of personal guarantees made to secure loans, failure to obtain spousal consents, failure to investigate the propriety of SEC waivers, failure to collect required tax return information, failure to obtain audited financials to determine creditworthiness of borrowers, failure to properly underwrite increases in credit lines, and failure to acquire appropriate corporate documents, among others.  *Id.* ¶ 65.

Plaintiff and Mr. Maniscalco reported these concerns throughout the investigation and through draft reports submitted to Plaintiff's supervisor and reiterated these findings in numerous communications with Defendant Tolla in December 2020.  *Id.* ¶ 66.  On or around December 17, 2020, Plaintiff and Mr. Maniscalco submitted an initial draft 2020 summary on the Warehouse Lending Portfolio that raised a number of issues, including poor risk rating procedures, problems with underwriting of loans, including failure to collect necessary documents, failure to monitor the loans, including failure to monitor the financial condition of loan guarantors, failure to amend CRA's to reflect changes in the Credit Approval Memo, continued failure to use an accurate leverage ratio, continued lack of expertise of credit professionals, and continued failure to monitor loan covenants. *Id.* ¶ 69.

**H.     Plaintiff's Complaint About Axos's Review and Compliance Practices**

Plaintiff alleges that, in addition to the specific weaknesses that Plaintiff identified through her review of various Axos business units, she complained throughout her tenure about Axos's audit, review, and compliance practices more generally.  *Id.* ¶ 70.  Among other things, Plaintiff repeatedly pointed out that many of the staff Axos employed to underwrite loans and monitor credit exposure lacked credit experience and the training necessary to adequately perform their jobs.  *See id.*

## I.      Plaintiff's Complaints About Axos's Discriminatory Policies and Practices

Plaintiff alleges that Axos maintains a policy and practice of paying women less than men in the same or substantially similar job positions, even though those employees perform substantially equal or similar work.  *Id.* ¶ 75.  Axos also promotes men more frequently to better compensated job positions and levels than women despite similar qualifications and duties.  *Id.*  Plaintiff became aware of these policies and practices, through conversations with her fellow employees, including one male employee who was paid nearly twice as much as Plaintiff despite them having the same position.  *Id.*

Additionally, Plaintiff experienced numerous other forms of discriminatory behavior aimed at women while employed with Axos.  *Id.* ¶ 76.  For example, she was subjected to insensitive and/or disparaging comments by Axos's CEO, and Plaintiff and other women were also delegated a significant amount of administrative tasks compared to their male counterparts in similar roles.  *Id.*

Plaintiff first complained of these policies, practices, and comments to her supervisors and Defendant Tolla in or around January 2020.  *Id.* ¶ 77.  However, Axos failed to conduct any further investigation.  *Id.*

Plaintiff's formal complaint to HR in or around October 2020 also addressed the discrimination that Plaintiff had experienced.  *Id.* ¶ 78.  However, Plaintiff's complaints were once again dismissed.  *Id.*  In early November, Ms. Ciafardini told Plaintiff that she had found "no merit" to the complaints and that Plaintiff had to "solve" the problem.  *Id.*  Ms. Ciafardini indicated that Plaintiff would have to leave the Bank, asking what kind of severance would make her happy to leave and asking her to propose a severance in return for a full release of any claims against the Bank.  *Id.*  Two days after this meeting, Ms. Ciafardini called Plaintiff back to reiterate the offer to leave Axos and asked Plaintiff to "let her know" what it would take to get her to leave Axos.  *Id.* ¶ 79.

## J.      Plaintiff and Other ICR Personnel Who Supported Her Are Terminated

Plaintiff alleges that, on January 5, Defendant Tolla informed Plaintiff and several other members of the ICR team that they were being terminated.  *Id.* ¶ 80.  Plaintiff was

offered a severance of $27,076.96 in return for a "settlement and general release" of any claims against Axos and for signing an "over-the-top" declaration under oath. *Id.* ¶ 81. Through the terms of the settlement agreement, Axos also sought to prevent Plaintiff from engaging in whistleblower activity and reporting any instances of discriminatory behavior she had experienced or observed. *See id.* ¶ 82.

Axos's settlement agreement also required Plaintiff to not disclose any information obtained during her work for the Bank to any third party and required her to certify that she had destroyed any documents or information that she obtained in the course of her work. *Id.* ¶ 83. When Plaintiff declined to sign the release, Axos increased its efforts at intimidation, sending her a "cease and desist" letter on January 12 that threatened litigation and demanded Plaintiff not provide any information pertaining to Axos to any third party and inform Axos if she had previously shared any such information with a third party. *Id.* ¶ 84. Axos also demanded that Plaintiff sign another declaration that stated, among other things, that she "understands that if it is discovered that I have used such Proprietary information for any purpose or provided such Proprietary Information to a third party or third parties to use, I will be exposed to have improperly used stolen information." *Id.* Axos subsequently has pursued its claims against Plaintiff in arbitration. *Id.* ¶ 85.

Plaintiff brings eight claims in her First Amended Complaint: (1) Sarbanes-Oxley Act (SOX) Retaliation (18 U.S.C. § 1514A) against all Defendants; (2) Whistleblower Retaliation in violation of Cal. Lab. Code § 1102.5 against Defendants Axos Bank and Axos Financial; (3) violation of California Equal Pay Act Lab. Code § 1197.5 against Defendants Axos Bank and Axos Financial; (4) Gender Discrimination in violation of FEHA Gov. Code § 12940, *et seq.* against Defendants Axos Bank and Axos Financial; (5) Failure to Prevent Discrimination and Harassment in violation of Gov. Code § 12940(j)(k) against Defendants Axos Bank and Axos Financial; (6) Retaliation in violation of FEHA against Defendants Axos Bank and Axos Financial; (7) Wrongful Termination in violation of Public Policy; (8) Unlawful Business Practices (Cal. Bus. &

Prof. Code §§ 17200, *et seq.*) against Defendants Axos Bank and Axos Financial.  *Id.* ¶¶ 88–145.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of*

*Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUEST FOR JUDICIAL NOTICE

While, generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003), a court may, however, consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For example, "a court may take judicial notice of matters of public record," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.

A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

Plaintiff asks the Court to judicially notice three exhibits in support of her opposition to the motion to dismiss: (1) an October 4, 2022 "Right to Sue" Letter from the California Department of Fair Employment and Housing ("DFEH"); (2) the "Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934," available on the Securities and Exchange Commission's website; and (3) the "Internal Routine and Controls Section 4.2" from the RMS Manual of Examination

Policies, available on the Federal Deposit Insurance Corporation's website.  *See* Doc. No. 23-2.  Defendants have not opposed this request.

The Court may take judicial notice of Exhibit A.  "Plaintiffs' DFEH charges and right-to-sue letters are 'public records whose accuracy is not in dispute.'"  *Anderson v. Smithfield Packaged Meats Corp.*, No. 2:20-cv-01655-AB-MRWx, 2020 U.S. Dist. LEXIS 156420, at *5 (C.D. Cal. Mar. 26, 2020) (quoting *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 904 n.3 (N.D. Cal. 2013)) (taking judicial notice of a party's DFEH complaint and right-to-sue letter).  The Court may also take judicial notice of Exhibits B and C because "[u]nder Rule 201, [a] court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies."  *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (collecting cases in which courts have taken judicial notice of the websites of government agencies).

Accordingly, the Court **GRANTS** Plaintiff's request and takes judicial notice of Exhibits A, B, and C submitted in support of her opposition to the motion to dismiss.

## IV. DISCUSSION

Defendants Axos Bank, John Tolla, Eshel Bar-Adon, and Tom Constantine move to dismiss Plaintiff's first, third, fourth, fifth, sixth, and eighth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. No. 13.  Defendant Axos Financial Inc. moves to dismiss all causes of action against it pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See id.*  The Court assesses each claim in turn.

### A.   Claim 1: Sarbanes-Oxley Act (SOX) Retaliation (18 U.S.C. § 1514A)

In her first cause of action, Plaintiff alleges violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, against all Defendants.  FAC ¶¶ 88–96.  Pursuant to the Sarbanes-Oxley Act:

> No [publicly-traded] company . . . including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company . . . or any officer, employee, contractor,

subcontractor, or agent of such company . . . may discharge . . . threaten, harass, or in other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—

(1) to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by

(A) a Federal regulatory or law enforcement agency;

(B) any Member of Congress or any committee of Congress; or

(C) a person with supervisory authority over the employee . . . .

18 U.S.C. § 1514A.

To state a prima facie case under 18 U.S.C. § 1514A, Plaintiff must plead that: (1) she engaged in a protected activity; (2) Defendant knew or suspected, actually or constructively, that she engaged in the protected activity; (3) she suffered an adverse employment action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). The Court confines its analysis to the elements challenged in Defendants' motion to dismiss.

   1.   *All Defendants*

      a.   Legal Standard

As an initial matter, the parties dispute the pleading standard applicable to the first element of Plaintiff's SOX claim. Defendants maintain that the standard set forth in *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989 (9th Cir. 2009), controls. *See* Doc. No. 13-1 at

13–20; Doc. No. 25 at 7.[3]  *Van Asdale* adopted the standard set forth in *Platone v. FLYi, Inc.*, 25 IER Cases 278, 287, 2006 DOLSOX LEXIS 105, *33 (Dep't of Labor Sept. 29, 2006), and held, in relevant part: First, "to constitute protected activity under Sarbanes-Oxley, an employee's communications must definitively and specifically relate to [one] of the listed categories of fraud or securities violations under 18 U.S.C. § 1514A(a)(1)." *Van Asdale*, 577 F.3d at 996–97 (internal quotation marks and alteration omitted). Second, the complaint must "approximate . . .  the basic elements of securities fraud" of the kind of fraud or violation alleged.  *See id.* at 1001 (citation omitted).  Plaintiff maintains that the standard for pleading protected activity under the Sarbanes-Oxley Act was relaxed when the Administrative Review Board ("ARB") abrogated *Platone* in *Sylvester v. Parexel Int'l LLC*, No. 07-123, 32 IER Cases 497, 2011 WL 2165854, at *14–15 (U.S. Dept. of Labor May 25, 2011) (en banc) and urges this Court to follow the reasoning in *Erhart v. Bofi Holding, Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017). *See* Doc. No. 23 at 9–11.

        In a 2016 opinion, the *Erhart* court held: "With *Platone* abrogated, *Sylvester* now provides the ARB's interpretation of 18 U.S.C. § 1514A(a)(1).  The Court believes that the Ninth Circuit consistent with its approach in *Van Asdale*, would similarly defer to the ARB's reasonable interpretation of the statute that is now provided in *Sylvester*."  *Erhart v. Bofi Holding, Inc.*, No. 15-cv-02287-BAS(NLS), 2016 U.S. Dist. LEXIS 131761, at *31–32 (S.D. Cal. Sept. 26, 2016).  Two years later, in *Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176 (9th Cir. 2019), the Ninth Circuit cited both *Van Asdale* and *Sylvester* with approval.

        Having considered the parties' briefing, and having conducted an independent review of the relevant case law, the Court adopts the reasoning of *Erhart v. Bofi Holding*,

---

[3] Defendants also point to *Rocheleau v. Micosemi*, 680 Fed. App'x 533, 535 (9th Cir. 2017) as support for their arguments, but by its own terms, *Rocheleau* is "not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3."

1    *Inc.*, 445 F. Supp. 3d 831, 845–46 (S.D. Cal. 2020) and *Erhart v. Bofi Holding, LLC*,

2    2020 U.S. Dist. LEXIS 57137, at *27–31 (S.D. Cal. Mar. 31, 2020), which reconcile *Van*

3    *Asdale* with *Sylvester*.  The *Erhart* court summarized the standard set forth in *Sylvester*,

4    which requires a plaintiff to show she had a "reasonable belief" that the reported conduct

5    constituted a violation of federal law:

7        To recap, Erhart's Sarbanes-Oxley whistleblower retaliation claim requires
8        him to demonstrate he "provide[d] information . . . regarding any  conduct
         which [he] reasonably believe[d] constitute[d] a violation of section 1341
9        [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or
         commodities fraud], any rule or regulation of the Securities and Exchange
10       Commission, or any provision of Federal law relating to fraud against
         shareholders . . . ." 18 U.S.C. § 1514A(a)(1).  Hence, Erhart does "not have to
11       prove that he reported an actual violation." *See Wadler v. Bio-Rad Labs.*, Inc.,
12       916 F.3d 1176, 1186-87 (9th Cir. 2019).  Rather, Erhart has "to prove only
         that he 'reasonably believed that there might have been' a violation."  *See id.*
13       at 1187 (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir.
14       2009)).

15       The "reasonable belief" standard includes both a subjective component
16       and an objective component. *E.g.*, *Wadler*, 916 F.3d at 1187-88, *Van Asdale*,
         577 F.3d at 1000.  For the subjective component, Erhart must demonstrate he
17       believed the conduct he reported violated one of the categories of laws in
18       § 1514A. *Van Asdale*, 577 F.3d at 1000. "The objective reasonableness
         component . . . 'is evaluated based on the knowledge available to a reasonable
19       person in the same factual circumstances with the same training and
         experience as the aggrieved employee.'" *Wadler*, 916 F.3d at 1188 (quoting
20       *Sylvester v. Parexel Int'l LLC*, No. 07-123, 2011 DOLSOX LEXIS 39, 2011
21       WL 2517148, at *12 (Dep't of Labor May 25, 2011)). This evaluation
         "requires an examination of the reasonableness of a complainant's beliefs, but
22       not whether the complainant actually communicated the reasonableness of
23       those beliefs to management or the authorities." *Id.* (quoting *Sylvester*, 2011
24       DOLSOX LEXIS 39, 2011 WL 2517148, at *13).

25       Moreover, "[t]o encourage disclosure, Congress chose statutory
26       language which ensures that "an employee's reasonable but mistaken belief
27       that an employer engaged in conduct that constitutes a violation of one of the
28       six enumerated categories is protected.'" *Van Asdale*, 577 F.3d at 1001.

> Therefore, an employee is not required to "essentially prove the existence of
> fraud before suggesting the need for an investigation," as such a requirement
> "would hardly be consistent with Congress's goal of encouraging disclosure."
> *Id.* at 1002.

*Erhart*, 445 F. Supp. 3d at 845–46 (alterations in original).

The Court now turns to the merits of the parties' arguments.

b.   <u>Analysis</u>

First, Defendants argue that Plaintiff fails to allege that she had a reasonable basis to believe the conduct she reported violated one of a limited set of federal law provisions and that Plaintiff fails to allege facts showing that Brinker engaged in activity protected under Section 1514A. *See* Doc. No. 13-1 at 11–19. As described above, the "reasonable belief" standard includes a subjective component and an objective component. *Erhart*, 445 F. Supp. 3d at 846 (first citing *Wadler*, 916 F.3d at 1187–88; then citing *Van Asdale*, 577 F.3d at 1000).

For the subjective component, Plaintiff must plausibly plead she believed the conduct she reported violated one of the categories of laws in § 1514A. *See id.* (citing *Van Asdale*, 577 F.3d at 1000). "The objective reasonableness component . . . 'is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee.'" *Erhart*, 445 F. Supp. 3d at 846 (quoting *Wadler*, 916 F.3d at 1188 (itself quoting *Sylvester v. Parexel Int'l LLC*, 2011 DOLSOX LEXIS 39, 2011 WL 2517148, at *12)). Plaintiff alleges the following:

> At all material times Defendant was subject to 18 U.S.C. § 1514A, which
> prohibits the company "or any officer, employee, contractor, subcontractor,
> or agent of such company" from "discharge[ing], demot[ing], suspend[ing],
> threaten[ing], harass[ing], or in any other manner discriminat[ing] against an
> employee in the terms and conditions of employment because of any lawful
> act done by the employee to provide information, cause information to be
> provided, or otherwise assist in an investigation regarding any conduct which

the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by a Federal regulatory or law enforcement agency . . . or a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct). Plaintiff actually and reasonably believed that the conduct and actions listed above violated federal statutes, rules and regulations, including Section 404 of the Sarbanes Oxley Act of 2002 and the Securities Fraud Statutes. Defendants harassed, threatened, discharged and retaliated against Plaintiff because she made oral and written complaints regarding weaknesses in Axos's internal financial controls and what she reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules and regulations. Plaintiff made these complaints to her employer, by and through its agents and employees, as well as to the OCC.

FAC ¶¶ 89–91.

"Without knowing what particular conduct [Plaintiff] asserts [s]he believed constituted a violation of any of the categories of laws enumerated in Section 1514(a)(1), the Court cannot meaningfully analyze whether [s]he plausibly alleges a belief that is objectively reasonable." *See Erhart*, 2016 U.S. Dist. LEXIS 131761, at *38–39. Accordingly, the Court cannot say that the operative complaint fairly puts Defendants on notice of the claim against them. *See Starr*, 652 F.3d at 1216 (holding that a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); *see also Erhart*, 2016 U.S. Dist. LEXIS 131761, at *39 ("[T]he test for protected activity under *Sylvester* and Section 1514A(a)(1) is not what the Court, now reviewing [the plaintiff's] alleged discoveries at [the defendant bank], believes may violate one of Section 1514A(a)(1)'s categories. The standard instead focuses on [the plaintiff's] belief at the time he reported [the defendant's] alleged misconduct—and whether a reasonable person in his position, not the Court's, would have believed that the conduct constituted a violation of the relevant

laws.  The Court cannot now articulate [plaintiff's] beliefs for him after the fact.").  The Court therefore **GRANTS** Defendants' motion to dismiss on this basis.[4]

Defendants additionally argue that the claim should be dismissed to the extent it seeks punitive and exemplary damages because such damages are not recoverable under Section 1514A.  Doc. No. 13-1 at 12 fn.4.  Plaintiff seems to concede this point as she did not address the argument in her opposition to the motion to dismiss.[5]  The Court concludes this provides another basis for dismissal of Plaintiff's SOX claim as to all Defendants.  *See Erhart v. Bofi Fed. Bank*, 2022 U.S. Dist. LEXIS 141027, at *2, *2 fn.1 (S.D. Cal. Aug. 8, 2022) (citing 18 U.S.C. § 1514A(c)) (additional citation omitted); *see also Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 803 (N.D. Cal. 2008) (internal citations and quotation marks omitted) ("[A]ny additional remedies not mentioned [in 1514A] would be limited to similar relief to make the employee whole.").

### 2.    *Defendants Bar-Adon and Tom Constantine*

Defendants Bar-Adon and Constantine additionally move to dismiss Claim 1 on the ground that Plaintiff fails to allege facts showing they directly or indirectly engaged in any unfavorable or adverse employment action against Plaintiff.  Doc. No. 13-1 at 20–22.

---

[4] Defendants also move to dismiss Claim 1 on the grounds Plaintiff fails to allege conduct approximating a federal securities fraud violation.  *See* Doc. No. 13-1 at 19–20.  The Court is not persuaded.  "[A]n employee is not required to 'essentially prove the existence of fraud before suggesting the need for an investigation,' as such a requirement 'would hardly be consistent with Congress's goal of encouraging disclosure.'"  *Erhart v. Bofi Holding, Inc.*, 445 F. Supp. 3d 831, 845–46 (S.D. Cal. 2020) (quoting *Van Asdale*, 577 F.3d at 1002); *see also Erhart v. Bofi Holding, Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017) (quoting *Sylvester v. Parexel Int'l LLC*, No. 07-123, 32 IER Cases 497, 2011 WL 2165854, at *18 (U.S. Dept. of Labor May 25, 2011)) (en banc)  ("The plaintiff, [ ] 'can have an objectively reasonable belief of a violation' even if the plaintiff 'fails to allege, prove, or approximate specific elements of fraud, which would be required under a fraud claim against the defrauder directly.'").

[5] The Court notes that Plaintiff also did not oppose Defendants' motion to strike these same allegations under Federal Rule of Civil Procedure 12(f).  However, in light of the Court's decision to grant Defendants' Rule 12(b)(6) motion as to Claim 1, the Court **DENIES AS MOOT** Defendants' motion to strike paragraph 96 of the First Amended Complaint under Rule 12(f).  *See* Doc. No. 14.

1

a.   Defendant Eshel Bar-Adon

2      Plaintiff alleges that Defendant Bar-Adon "is the Chief Legal Officer of Axos

3   Financial, Inc. and Executive Vice President, Strategic Partnerships for Axos Bank."

4   FAC ¶ 10.  Plaintiff further alleges that, in response to her draft Correspondent Lending

5   review, which Plaintiff began in November 2018,

6

7      management refused to provide any commentary or plans to remediate the
       deficiencies. The executive manager (and Chief Legal Officer), [Defendant]
8      Eshel Bar-Adon, refused to acknowledge the deficiencies, including the need
       for a contingency plan for the potential Bankruptcy of one of the primary
9      customers. As a result of [Defendant] Bar-Adon's delay, the many
10     "socialization" discussions, and the many management edits, the report was
       more than four months late and was significantly watered down before it was
11     presented to the Board of Directors and released to the OCC.

12

13

14  *Id.* ¶ 27.  Additionally,

15

16     By early 2020, Axos's Chief Risk Officer instructed [Plaintiff] to host daily
       meetings with the CL business unit to close out several past-due findings.
17     Eventually, she was thwarted by the Chief Legal Officer [Defendant Bar-
       Adon] who criticized her for being "too bureaucratic" when she sought to
18     establish accurate and effective risk management practices relevant to a
19     customer shared with another business unit that held an $87.5 million credit
       line from the Bank.
20

21

22  *Id.* ¶ 30.

23      In her opposition, Plaintiff argues that "it is reasonable to infer that Bar-Adon

24  would have played an instrumental role in her termination.  As Chief Legal Officer, he

25  was responsible for assessing whether the Bank was actually violating the law."  Doc.

26  No. 23 at 20.  Drawing all reasonable inferences, the allegations are not sufficient to

27  plausibly state a claim under Section 1514A against Defendant Bar-Adon.  *See Cahill*, 80

28  F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340) ("In reviewing a motion to

dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.").  Plaintiff does not allege Defendant Bar-Adon was directly or indirectly involved in the adverse employment decision, and it is not apparent from the FAC that other factors, like the size of the company, would raise a reasonable inference Defendant Bar-Adon was involved simply by the nature of his position.  The Court concludes this provides another basis for dismissal of Plaintiff's SOX claim against Defendant Bar-Adon.

b.   Defendant Tom Constantine

Plaintiff alleges that Defendant Constantine "is Executive Vice President & Chief Credit Officer at Axos Bank and Chief Credit Officer & Executive Vice President for Axos Financial, Inc."  FAC ¶ 11.  Plaintiff further alleges that, during the Equipment Finance ICR "exit meeting" with Defendant Constantine to review Plaintiff's draft report,

> he attacked her findings, attacked the scope of the report, and attacked [Plaintiff's] recommendations to improve the credit underwriting policies and risk rating criteria.  [Defendant] Constantine demanded that [Plaintiff] re-write the report as he was unwilling to provide any of the required management responses to remediate credit deficiencies or findings presented in the draft report.

*Id.* ¶ 38.

In her opposition, Plaintiff argues that "it is reasonable to infer that this high-level manager was instrumental in [Plaintiff's] unlawful termination."  Doc. No. 23 at 21.  Drawing all reasonable inferences, the allegations are not sufficient to plausibly state a claim under Section 1514A against Defendant Constantine.  *See Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340).  Plaintiff does not allege Defendant Constantine was directly or indirectly involved in the adverse employment decision and, similarly to Defendant Bar-Adon, it is not apparent from the FAC that other factors, like the size of the company, would raise a reasonable inference Defendant Constantine was

involved simply by the nature of his position.  The Court concludes this provides another basis for dismissal of Plaintiff's SOX claim against Defendant Constantine.

### 3.    Conclusion

In sum, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's SOX claim as to all Defendants.

## B.    Claim 3: Violation of California Equal Pay Act Lab. Code § 1197.5

In her third cause of action, Plaintiff alleges violation of the California Equal Pay Act ("EPA"), Cal. Lab. Code § 1197.5, against Defendants Axos Bank and Axos Financial.  FAC ¶¶ 103–10.  Defendants argue that Plaintiff fails to allege facts plausibly showing entitlement to relief.  Doc. No. 13-1 at 22–25.  Defendants urge that the "only 'allegations' relating to [Plaintiff's] EPA claim are mere unadorned and formulaic recitations of the statute."  *Id.* at 24.

Plaintiff alleges that she "is a woman who was paid wages lower than those paid to male employees of similar qualifications, seniority, and experience."  FAC ¶ 108.  She further alleges that "Axos maintained and continues to maintain a policy and practice of paying women less than men in the same or substantially similar job positions, even though those employees perform substantially equal or similar work[,]" that "Axos promotes men more frequently to better compensated job positions and levels than women despite similar qualifications and duties[,]" and that "[d]uring her employment, [Plaintiff] became aware of these policies and practices, through conversations with her fellow employees, including one male employee who was paid nearly twice as much as [Plaintiff] despite them having the same position."  *Id.* ¶ 75.  This is insufficient to survive the motion to dismiss.

"[T]hat an unidentified comparator performs 'substantially similar work' is a legal conclusion."  *Davis v. Inmar, Inc.*, No. 21-cv-03779 SBA, 2022 U.S. Dist. LEXIS 155126, at *14 (N.D. Cal. Aug. 29, 2022) (citing *Werner v. Advance Newhouse P'ship, LLC*, No. 1:13-CV-01259-LJO, 2013 U.S. Dist. LEXIS 117285, 2013 WL 4487475, at *5 (E.D. Cal. Aug. 19, 2013) (parenthetical information omitted).  Additionally, although

Plaintiff alleges one unidentified "male employee [ ] was paid nearly twice as much as [Plaintiff] despite them having the same position[,]" FAC ¶ 75, Plaintiff "fails to plead facts showing her and her comparator's roles required substantially equal skill, effort, and responsibility, and were performed under similar working conditions." *See id.*; *see also Banawis-Olila v. World Courier Ground, Inc.*, No. 16-cv-00982-PJH, 2016 U.S. Dist. LEXIS 99756, at *7 (N.D. Cal. July 29, 2016) (quoting *Suzuki v. State Univ. of N.Y. Coll. at Old Westbury*, No. 08-CV-4569 TCP, 2013 U.S. Dist. LEXIS 83555, 2013 WL 2898135, at *4 (E.D.N.Y. June 13, 2013)) ("Bald allegations that male employees were paid more than female employees, however, will not survive a motion to dismiss" when "a plaintiff failed to allege how his or her position and the comparison position were substantially similar").

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's EPA claim.

## C.    Claims 4 – 6: FEHA Claims

Plaintiff brings several causes of action for gender discrimination, harassment, and retaliation under California's Fair Employment and Housing Act ("FEHA") against Defendants Axos Bank and Axos Financial.  FAC ¶ 111–32.  Defendants argue that Plaintiff fails to allege facts showing Brinker has exhausted her administrative remedies as required to bring FEHA claims in this Court.  Doc. No. 13-1 at 23.  Plaintiff argues that she is "required to *exhaust* her administrative remedies, not to *plead exhaustion* of her administrative remedies."  Doc. No. 23 at 24 (emphasis in original).

To pursue claims for violations of FEHA in federal court, a plaintiff must first exhaust his or her administrative remedies.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001).  To exhaust administrative remedies on a FEHA claim, a claimant must first file an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") and then obtain a right-to-sue notice from DFEH.  *Id.*; Cal. Gov't Code § 12960.  Upon receiving a right to sue letter, a plaintiff has one year to file his or her FEHA claim in a judicial forum. Cal. Gov't Code § 12965(b).

The plaintiff ultimately bears the "burden to plead and prove timely exhaustion of administrative remedies, such as filing a sufficient complaint with [DFEH] and obtaining a right-to-sue-letter" prior to filing a claim under FEHA in court. *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014) (citing *Garcia v. Los Banos Unified School Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)).

As described *supra* Section III, the Court has granted Plaintiff's request for judicial notice of a right-to-sue letter from the DFEH. *See* Doc. No. 23-2 at 9–11. The right-to-sue letter is dated October 4, 2022. *See id.* Plaintiff filed her First Amended Complaint on July 7, 2022. *See* FAC. Thus, Plaintiff obtained the right-to-sue-letter after filing suit. Plaintiff has therefore failed to plead timely exhaustion of administrative remedies. *See Kim*, 226 Cal. App. 4th at 1345 (citing *Garcia*, 418 F. Supp. 2d at 1215); *see also Rosholm v. BYB Brands, Inc.*, No. SACV 15-1738 JVS (KESx), 2016 U.S. Dist. LEXIS 48684, at *14 (C.D. Cal. Feb. 22, 2016) (citing *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001)) ("A claimant must exhaust administrative remedies before filing a FEHA discrimination suit in federal court."); *Andrade v. Arby's Rest. Grp., Inc.*, No. 15-cv-03175 NC, 2015 U.S. Dist. LEXIS 150031, at *11–14 (citing *Garcia*, 418 F. Supp. 2d at 1215) (finding, regarding alleged violations of FEHA, that a plaintiff "must allege facts regarding who the [DFEH right-to-sue] letter permits her to sue and on what grounds" to sufficiently allege exhaustion).

Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's FEHA claims.

## D.   Claim 8: Unlawful Business Practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

In her eighth cause of action, Plaintiff alleges violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("Unfair Competition Law" or "UCL") against Defendants Axos Bank and Axos Financial. FAC ¶¶ 140–45. Defendants argue that "the only monetary relief available under the UCL is UCL restitution" and that Plaintiff fails to identify lost money or property in which Plaintiff has a vested interest. Doc. No. 13-1 at 26. Defendant urges that "UCL restitution requires that the defendant 'take' from the plaintiff money or

property, or fail to give to plaintiff money or property in which the plaintiff has a vested interest." *Id.* at 26 (citations omitted).  Plaintiff argues that "Defendants' unlawful business practice of paying Plaintiff less than men in a comparable position entitles her to restitution of the money to which she is owed by statutory right."  Doc. No. 23 at 26.

The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotations omitted).  "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs."  *Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (2012). Plaintiff alleges that Defendants Axos Bank and Axos Financial violated all three prongs. FAC ¶ 142.  The Court therefore addresses each prong in turn.

Even assuming unequal pay can form the basis of a UCL claim, Plaintiff fails to plausibly plead the unlawful prong of the UCL because—as discussed in the preceding section—she fails to plausibly plead a violation of the EPA.  A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action."  *Portelli v. WWS Acquisition, LLC*, No. 17-CV-2367 DMS (BLM), 2018 WL 9539773, at *4 (S.D. Cal. July 6, 2018) (quoting *Krantz v. BT Visual Images*, 107 Cal. Rptr. 2d 209, 219 (Cal. Ct. App. 2001)).

As to the unfair prong, "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1137 (N.D. Cal. 2010) (quoting *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 129 (Cal. Ct. App. 2006)). "To sufficiently plead a claim under the UCL's 'unfair' prong, plaintiffs must allege facts supporting all three elements."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).  Here, Plaintiff neglects to include any facts that might support the unfair prong's elements. Accordingly, Plaintiff fails to adequately plead the unfair prong.  Similarly, Plaintiff does

not sufficiently plead the fraudulent prong because she fails to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).[6]  Accordingly, the Court concludes that Plaintiff fails to state a claim under the unfair and fraudulent prongs.

Because Plaintiff fails to adequately plead her UCL cause of action under all three prongs, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's UCL claim.

**E.    Axos Financial**

Axos Financial additionally argues that it "is incorrectly named as a defendant" because Axos Financial is "a distinct and separate legal entity" from Axos Bank" and Plaintiff has not alleged "facts that show Axos Financial treats Axos Bank as its alter ego or that otherwise justify piercing the corporate veil."  *See* Doc. No. 13-1 at 26–27 (citation omitted).

Plaintiff alleges that she was "hired by Axos Bank in October of 2018."  FAC ¶ 12. Plaintiff has not pleaded any facts regarding Axos Financial beyond alleging that it is "a Bank holding company that is publicly trade on the New York Stock Exchange[,]" "Defendant Axos Bank is a wholly owned subsidiary of Axos Financial Inc.[,]" that Defendant Bar-Adon is the "Chief Legal Officer of Axos Financial, Inc." and Defendant Tom Constantine is the "Chief Credit Officer & Executive Vice President for Axos Financial, Inc."  *Id.* ¶¶ 7, 8, 10, 11 (emphasis omitted).  This is insufficient to state a claim based on alter-ego liability.  *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard[.]").  Plaintiff appears to concede as much, and instead argues that "[t]he Court should grant [Plaintiff] leave to amend to add additional allegations" as

---

[6] "[The Ninth Circuit] [has] specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the [ ] UCL."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–05 (9th Cir. 2003)).

she is "prepared to allege many additional facts to support an alter ego theory."  Doc. No. 23 at 22.

Based on the foregoing, including the reasoning *supra* Sections IV.A–IV.D, the Court **GRANTS** Defendant Axos Financial's motion and **DISMISSES** all claims to the extent Plaintiff brings them against Defendant Axos Financial.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and **DENIES AS MOOT** Defendants' motion to strike.  Although Plaintiff has failed to adequately plead her claims against Defendants, it is not clear that she would be unable to do so if given leave to amend.  Accordingly, dismissal is without prejudice and with leave to amend.  *See Knappenberger*, 566 F.3d at 942.  Plaintiff must file an amended complaint on or before **January 17, 2023**.

**IT IS SO ORDERED**.

Dated:  December 15, 2022

HON. MICHAEL M. ANELLO
United States District Judge