1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

JENNIFER BREAR BRINKER,

Case No. 22-cv-386-MMA (DDL)

12

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

13

v.

14

AXOS BANK, et al.,

15

Defendants.

[Doc. No. 36]

16
17
18

19    Plaintiff Jennifer Brear Brinker ("Plaintiff") brings this action against Defendants

20    Axos Bank, Axos Financial Inc., and John Tolla (collectively, "Defendants"). *See* Doc.

21    No. 31 ("Second Amended Complaint" or "SAC"). Defendants now move to dismiss

22    Plaintiff's first, third, fourth, fifth, sixth, and eighth causes of action pursuant to Federal

23    Rule of Civil Procedure 12(b)(6). *See* Doc. No. 36. Defendant Axos Financial also

24    separately moves to dismiss all causes of action against it. *See id.* Plaintiff filed an

25    opposition to Defendants' motion,[1] to which Defendants replied. *See* Doc. Nos. 40, 41.

26
27

28   [1] Plaintiff is reminded that the Civil Local Rules require that briefs, including footnotes, be "no smaller than 14-point standard font (e.g. Times New Roman)." CivLR 5.1.a.

The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 42.  For following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## I. Background[2]

The factual background is set forth more fully in the Court's Order on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and Motion to Strike, *see* Doc. No. 30, which the Court incorporates by reference here.  For the purpose of this background section, the Court provides the following summary.

In October 2018, Plaintiff was hired by Axos Bank as a Senior Independent Credit Review Officer for the Governance, Risk Management, and Compliance Department. SAC ¶ 10.  Plaintiff was responsible for reviewing Axos Bank's loan portfolios to examine, measure, monitor, and report weaknesses and deficiencies with the Bank's lending and risk management standards and practices.  *Id.*

Generally speaking, Plaintiff alleges that Axos Bank "has a long history of high employee turnover in the Bank's compliance, risk management, and internal audit functions" and that "[t]hese turnover rates are caused in part by the Bank's practice of hiring audit and credit review professionals who lack the skills required to identify the Bank's many failures, and then retaliating against those who do."  *Id.* ¶ 22.  During her time at Axos Bank, Plaintiff contends she uncovered a laundry list of compliance, governance, and risk-management issues in her review of the Bank's Correspondent Lending, Equipment Finance, Warehouse Lending, and Lender Finance Portfolios.  *See id.* at ¶¶ 25–34, 40–48, 53–61, 63–67, 72–77, 83–87.  Plaintiff alleges that when she raised her concerns to Axos Bank, such as in reports and meetings, she was rebuffed in a

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the First Amended Complaint.  *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

variety of ways.  For example, she contends she was told to exclude certain findings from her final report, *see id.* ¶ 30, diminish the severity of her findings, *see id.* ¶ 32, "socialize" her findings with non-compliance personnel, *see id.* ¶¶ 35, 62, 78, and in one instance, rewrite her report, *see id.* ¶ 49, resulting in her reports being late and "significantly watered down," *see id.* ¶¶ 36, 50, 51, 62.  Additionally, she contends that her concerns were attacked and ignored, *see id.* ¶¶ 36, 44, 46, 49, or that only nominal changes were made, *see id.* ¶ 45, and that on one occasion she was excluded from presenting her report, *see id.* ¶ 52.

Plaintiff also maintains that various persons at Axos Bank criticized her complaints and reports with comments such as that she was "too negative," "needed to lower her standards," was "too demanding," "had communication problems," *see id.* ¶ 37, was "too bureaucratic," *see id.* ¶ 39, was "meddling beyond the scope of her duties," *id.* ¶ 42, should "let it go," *id.* ¶ 43, and was "crazy," *see id.* ¶ 50.

Plaintiff further asserts that Axos Bank has a policy and practice of paying women less than men in the same or substantially similar job positions and promotes men more frequently.  *See id.* ¶ 93.

Plaintiff first complained about these issues in January 2020, when she met with her supervisor and manager, Defendant John Tolla, during Axos Bank's semi-annual review.  *See id.* ¶ 96.  She complained again to Mr. Tolla in August 2020.  *See id.* ¶ 97.

In October 2020, Plaintiff filed a formal complaint with Human Resources.  *See id.* ¶¶ 80, 98.  In early November 2020, Axos Bank's HR Vice President, Ms. Mary Ellen Ciafardini, found her complaint was without merit.  *See id.* ¶ 81.  Ms. Ciafardini told Plaintiff to solve the problem because things "couldn't go on like this any longer."  *Id.* Ms. Ciafardini indicated that Plaintiff would have to leave Axos Bank and asked "what kind of severance would make her happy to leave and ask[ed] her to propose a severance in return for a full release of any claims against the Bank."  *Id.*  Two days after the meeting, Ms. Ciafardini called Plaintiff to reiterate the offer to leave Axos Bank and asked Plaintiff to "let her know" what it would take to get Plaintiff to leave.  *Id.* ¶ 82.

On January 5, 2021, Plaintiff was terminated along with several other members of the Independent Credit Review team. *See id.* ¶¶ 4, 100. She was offered a severance in return for a settlement and general release of claims against Axos Bank and signing a declaration under oath. *See id.* ¶ 101. When Plaintiff refused to sign the release, Axos Bank sent her a cease-and-desist letter and threatened litigation. *See id.* ¶ 104.

Based upon the foregoing, Plaintiff asserts the following eight causes of action: (1) retaliation in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, against all Defendants; (2) whistleblower retaliation in violation of California Labor Code § 1102.05 against Axos Bank and Axos Financial; (3) violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5, against Axos Bank and Axos Financial; (4) gender discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov. Code § 12940 *et seq.* ("FEHA"), against Axos Bank and Axos Financial; (5) failure to prevent discrimination and harassment in violation of FEHA, Cal.Gov. Code § 12940(j)(k), against Axos Bank and Axos Financial; (6) retaliation in violation of FEHA, Cal. Gov. Code § 12940 *et seq.* against Axos Bank and Axos Financial; (7) wrongful termination in violation of public policy against Axos Bank and Axos Financial; and (8) unlawful business practices in violation of California Business & Professions Code § 17200 *et seq.* against Axos Bank and Axos Financial.

## II. LEGAL STANDARD

A Rule 12(b)(6)[3] motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic

---

[3] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).  In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUEST FOR JUDICIAL NOTICE

Plaintiff has filed a request for judicial notice in support of her opposition to Defendants' motion. *See* Doc. No. 38.  While, generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003), a court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  For example, "a court may take judicial notice of

matters of public record," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201.

A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

Plaintiff asks the Court to judicially notice four exhibits: (A) her October 4, 2022 "Right to Sue" Letter from the California Department of Fair Employment and Housing ("DFEH"); (B) the "Commission Guidance Regarding Management's Report on Internal Control Over Financial Reporting Under Section 13(a) or 15(d) of the Securities Exchange Act of 1934," available on the Securities and Exchange Commission's ("SEC") website; (C) the "Internal Routine and Controls Section 4.2" from the RMS Manual of Examination Policies, available on the Federal Deposit Insurance Corporation's website; and (D) AXOS Financial, Inc.'s 2021 Form 10-K, available on the SEC's website. Defendants have not opposed her request.

The Court has already granted Plaintiff's request as to Exhibits A, B, and C, *see* Doc. No. 30 at 10–11, and for those same reasons **GRANTS** her request here. As to Exhibit D, the Court finds that it is a publicly available document that is neither subject to reasonable dispute nor can be reasonably questioned. *See U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (collecting cases in which courts have taken judicial notice of the websites of government agencies). Accordingly, the Court **GRANTS** Plaintiff's request as to Exhibit D as well.

1

### IV. DISCUSSION

2       Defendants move to dismiss Plaintiff's first, third, fourth, fifth, sixth, and eighth

3  causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. No. 36.

4  Axos Financial separately moves to dismiss all claims against it.  *See id.*  The Court

5  addresses each argument in turn.

6  **A.      Axos Financial & Alter Ego Theory**

7       None of the allegations of wrongdoing, in both the First and Second Amended

8  Complaints, are particular to Axos Financial.  The Court previously dismissed all of

9  Plaintiff's claims against Axos Financial, holding that Plaintiff failed to plead a theory of

10  alter ego liability in her First Amended Complaint.  *See* Doc. No. 30 at 24–25.  Axos

11  Financial again seeks to be dismissed from this action for the same reasons.  *See* Doc.

12  No. 6-1 at 29–31.  Plaintiff does not address this argument in opposition.

13       Under California law, the "alter ego" theory "refers to situations where the 'owner

14  of a corporation will be held liable for the actions of the corporation.'"  *Daewoo Elecs.*

15  *Am., Inc. v. Opta Corp.*, 875 F.3d 1241, 1249 (9th Cir. 2017) (quoting *Wady v. Provident*

16  *Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (itself

17  quoting *Roman Catholic Archbishop of S.F. v. Superior Court*, 93 Cal. Rptr. 338, 341

18  (Cal. Ct. App. 1971))).  Alter ego liability allows a plaintiff to "pierce the corporate veil"

19  and hold a corporate actor or parent corporation liable for the conduct of the corporation

20  or subsidiary.  *Stark v. Coker*, 20 Cal. 2d 839, 845 (Cal. 1942).  To plead alter ego

21  liability, a plaintiff must allege: "(1) that there be such unity of interest and ownership

22  that the separate personalities of the corporation and the individual no longer exist and

23  (2) that, if the acts are treated as those of the corporation alone, an inequitable result will

24  follow."  *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-0578-BTM-BLM, 2010 U.S. Dist.

25  LEXIS 87205, at *16–17 (S.D. Cal. Aug. 24, 2010) (quoting *Automotriz Del Golfo De*

26  *California S. A. De C. V. v. Resnick*, 47 Cal. 2d 792, 796 (Cal. 1957) (internal quotation

27  marks omitted); *see also Daewoo Elecs.*, 875 F.3d at 1249–50 (quoting *Mesler v. Bragg*

28  *Mgmt. Co.*, 216 Cal. Rptr. 443, 448 (Cal. 1985)).

Defendants argue that Plaintiff fails to allege facts to support the unity of interest element.  *See* Doc. No. 36-1 at 30.

> Factors that can be used to support the first element, unity of interest, include commingling of funds, failure to maintain minutes or adequate corporate records, identification of the equitable owners with the domination and control of the two entities, the use of the same office or business locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual, and the failure to adequately capitalize a corporation.

*Pac. Mar. Freight*, 2010 U.S. Dist. LEXIS 87205, at *17 (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 814–815 (Cal. Ct. App. 1962)).

Turning to Plaintiff's allegations related to the first element, Plaintiff represents that Axos Financial is a holding company that is publicly traded on the New York Stock Exchange.  *See* SAC ¶ 8.  Plaintiff alleges that Axos Financial is Axos Bank's parent company; Axos Bank is a wholly owned subsidiary of Axos Financial.  *See id.* ¶ 7. Plaintiff explains that Axos Bank and Axos Financial "were originally branded as Bank of Internet USA," and that in September 2018, "BofI Holding, Inc., parent of BofI Federal Bank, announced that its new corporate name was Axos Financial, Inc. ("Axos Financial"). BofI Federal Bank became Axos Bank on October 1, 2018." *Id.* ¶ 17. Plaintiff contends that Axos Bank and Axos Financial

> maintain interlocking boards and employ many of the same management personnel. They commingle funds and assets, or divert funds or assets from one entity to another. They frequently use the same offices or business locations. They conceal or misrepresent their financial interests so as to benefit each other. They manipulate corporate assets and liabilities in entities to concentrate the assets in one and the liabilities in another, and contract with each other as a shield against personal liability in their external corporate contracts.

*Id.* ¶ 18.

Plaintiff further asserts that Axos Bank and Axos Financial have the same executive officers, *see id.* ¶ 19, and share the same Board members, *see id.* ¶ 20, and that they often refer to themselves as one company in public disclosures, *see id.* ¶ 21.

The Court agrees with Defendants that Plaintiff's allegations are rather conclusory, and "California courts emphasize that the alter ego determination is very fact specific." *Smith v. Simmons*, 638 F. Supp. 2d 1180, 1191 (E.D. Cal. 2009), *aff'd*, 409 F. App'x 88 (9th Cir. 2010).  However, "[a]t the motion to dismiss stage, the pleading requirements for alleging an alter ego theory are 'not strict.'"  *Parrish v. Gordon Lane Healthcare, LLC*, No. SACV 22-01790-CJC (KESx), 2022 U.S. Dist. LEXIS 233356, at *7–8 (C.D. Cal. Dec. 29, 2022) (quoting *Unichappell Music, Inc. v. Modrock Prods., LLC*, 2015 U.S. Dist. LEXIS 16111, at *11 (C.D. Cal. Feb. 10, 2015)).  "Because the most damning evidence of the unity of 'interest and identity' is often in the hands of the corporation and its principals and can be found nowhere else," some courts find it sufficient for a plaintiff to plead only "two or three" of the factors showing unity of interest or identity to withstand a motion to dismiss.  *Id.* (citing *Pac. Mar. Freight*, 2010 U.S. Dist. LEXIS 87205, at *19); *see also Laguna v. Coverall N. Am., Inc.*, 2009 U.S. Dist. LEXIS 118098, 2009 WL 5125606, at *3 (S.D. Cal. Dec. 18, 2009) (denying motion to dismiss alter ego claims when "[t]he allegations sufficiently identif[ied] the contours of an alter ego claim such that [the defendant was] able to prepare a response to the SAC and to conduct discovery," noting that "[t]he fundamental inquiry to establish a viable alter ego claim requires the parties to delve into the unity of interests shared by [the alleged alter ego entities]—knowledge uniquely within the possession of the corporate entities, and not Plaintiff").  Here, the Plaintiff has identified and supported at least two "unity of interest" factors.  Accordingly, the Court finds that Plaintiff's allegations are sufficient at this stage and therefore **DENIES** Defendants' motion to dismiss on this basis.

As to the second element, Defendants argue in a footnote that Plaintiff fails to allege that fraud or injustice will result if Axos Financial is not a defendant.  *See* Doc. No. 36-1 at 30 fn.16.  "A footnote is the wrong place for substantive arguments on the

merits of a motion, particularly where such arguments provide independent bases for dismissing a claim not otherwise addressed in the motion." *Rivera v. Garland*, No. 21-cv-213-MMA (AGS), 2021 U.S. Dist. LEXIS 90007, at *13–14 n.3 (S.D. Cal. May 11, 2021) (quoting *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 935 n.1 (N.D. Cal. 2008)).  As such, arguments raised only in footnotes are generally deemed waived.  *Riegels v. Comm'r (In re Estate of Saunders)*, 745 F.3d 953, 962 n.8 (9th Cir. 2014); *see also Kamal v. Eden Creamery, LLC*, No. 18-cv-01298-BAS-AGS, 2019 U.S. Dist. LEXIS 107263, at *24 n.5 (S.D. Cal. June 26, 2019) ("Much like the Court 'do[es] not expect to find elephants in mouseholes,' the Court does not expect to find dispositive arguments in footnotes.") (quoting *Gallo v. Moen Inc.*, 813 F.3d 265, 269 (6th Cir. 2016)).  Nonetheless, the Court agrees that Plaintiff has failed to plead the second element, either formulaically or with facts.  Accordingly, the Court **GRANTS** Axos Financial's motion on this basis.

## B.    Claim 1: Sarbanes-Oxley Act Whistleblower Retaliation

Plaintiff's first cause of action is for whistleblower retaliation in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, against all Defendants.  SAC ¶¶ 109–27.  The Court previously dismissed Plaintiff's SOX claim for failure to put Defendants on notice of particular conduct she believed violated § 1514A(a)(1)'s enumerated categories.  *See* Doc. No. 30 at 17.

To state a prima facie case under 18 U.S.C. § 1514A, Plaintiff must plead that: (1) she engaged in a protected activity; (2) Defendant knew or suspected, actually or constructively, that she engaged in the protected activity; (3) she suffered an adverse employment action; and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009).  As to the protected activity element, the anti-retaliation statute protects an employee who "provide[s] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities or

commodities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . ."  18 U.S.C. § 1514A(a)(1).  The second to last segment, "any rule or regulation of the [SEC]," refers to "administrative rules or regulations," not statutes.  *See Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186–87 (9th Cir. 2019).

The parties' dispute is centered on whether Plaintiff has plausibly pleaded the first element: that she engaged in a protected activity.  To allege a protected activity, Plaintiff "'need only show that [ ] she 'reasonably believe[d]' that the conduct complained of is a violation of the laws enumerated in 18 U.S.C. § 1514A."  *Erhart v. Bofi Holding, Inc.*, 269 F. Supp. 3d 1059, 1072 (S.D. Cal. 2017) (quoting *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 811 (6th Cir. 2015) (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 220–21 (2d Cir. 2014))).  The reasonable belief standard "involves both a subjective component and an objective component."  *Id.*  "The subjective component is satisfied if the employee actually believed that the conduct complained of constituted a violation of relevant law."  *Id.*  As for the objective component, it "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee."  *Id.* (quoting *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009)); *see also Nielsen*, 762 F.3d at 221 ("That is to say, a plaintiff 'must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation.'").  The reasonable person standard recognizes that "[m]any employees are unlikely to be trained to recognize legally actionable conduct by their employers."  *Nielsen*, 762 F.3d at 221.  Accordingly, "the inquiry into whether an employee had a reasonable belief is necessarily fact-dependent, varying with the circumstances of the case."  *Rhinehimer*, 787 F.3d at 811.

The Court begins by ascertaining what protected laws, rules, and regulations Plaintiff allegedly reported.  At the outset of her Second Amended Complaint, Plaintiff identifies the following:

13.     15 U.S.C. § 78m(b)(2)(B) requires that a securities issuer: "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances" that "transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets . . . ; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences."

14.     Federal law and SEC regulations require that Axos maintain adequate "internal control over financial reporting," 17 C.F.R. § 240.13a-15(a), and that Axos evaluate its internal controls on a yearly basis and certify that its controls are adequate, as well as disclose any control deficiencies. Id., 17 C.F.R. § 240.13a-14.

15.     Exchange Act Rules 13a-15(f) and 15d-15(f), 17 CFR 240.13a-15(f) and 15d-15(b), define internal control over financial reporting as: A process . . . to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles and includes those policies and procedures that: (1) Pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the registrant; and (2) Provide reasonable assurance that transactions are recorded as necessary to permit reasonable preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the registrant are being made only in accordance with authorizations of management and directors of the registrant.

16.     Federal Law and SEC rules also prohibit fraud against shareholders by a publicly traded company such as Axos Financial. See, e.g., 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

SAC ¶¶ 13–16.

Peppered throughout Plaintiff's Second Amended Complaint are identical references to "15 U.S.C. § 78m(b)(2)(B)(ii), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5." *See id.* ¶¶ 34, 48, 60, 75, 87.  However, in support of her SOX claim, Plaintiff repeatedly asserts that she believed that all of the issues she identified and reported

violated SOX § 404, as well as SEC Rule 10b-5 and section 17(a)(2) of the Securities Act. *See id.* ¶¶112–115, 117–122.

Generally speaking, Defendants argue that while Plaintiff has now identified authorities protected by § 1514A, she has not tethered the alleged failures, misconduct, and issues to her beliefs. *See* Doc. No. 36-1 at 14–23.

The Court begins by noting the obvious but presently unstated: Plaintiff is not the ordinary employee "unlikely to be trained to recognize legally actionable conduct by their employers." *Nielsen*, 762 F.3d at 221. She is, or was, some type of compliance, governance, and/or risk management officer. *See* SAC ¶ 10. She was hired by Axos Bank specifically to review its Portfolios to assess, among other things, deficiencies in their standards and practices, *see id.*, and it appears that part of her duties involved assessing Axos Bank's regulatory compliance, *see, e.g.*, *id.* ¶¶ 26, 32. The Court can therefore plausibly infer that her reports of various alleged misconduct were tethered to a belief in a violation of some law, rule, or regulation.

The question then is whether Plaintiff pleads that she believed the violations were of an authority protected by § 1514A.

1. *SEC Internal Controls Rules*

While Plaintiff identifies 17 C.F.R. §§ 240.13a-14 and 240.13a-15 at the outset of her pleading, the remainder of her Second Amended Complaint is devoid of any reference to these authorities. It is not clear if Plaintiff seeks to premise her SOX claim upon a believed violation of these SEC Rules—while Plaintiff repeatedly pleads that she believed Axos Bank was inaccurately certifying that its internal controls were adequate, *see* SAC ¶¶ 33, 48, 60, Plaintiff never pleads that she believes any of the issues she complained of violated these Rules. To be sure, Rules 240.13a-14 and 240.13a-15 are referenced only seven (7) times in the Second Amended Complaint, and all are on page 3. *See* SAC at 4.

The Court will not parse through Plaintiff's pleading and tie her allegations and beliefs to specific authorities covered by § 1514A from a hindsight perspective; it is

Plaintiff's obligation to plead and ultimately prove what she believed at the time she complained of the issues. Accordingly, to the extent Plaintiff brings her SOX claim based upon an alleged violation of 17 C.F.R. §§ 240.13a-14 or 240.13a-15, the Court finds she has not pleaded a protected activity on this basis and therefore **DISMISSES** her claim.

### 2.    FCPA and SOX § 404

Turning to 15 U.S.C. § 78m(b)(2)(B)(ii), the Court is not convinced that Plaintiff has plausibly pleaded her SOX claim based upon a believed violation of the Foreign Corrupt Practices Act, § 78dd-1 *et seq.* ("FCPA"). Plaintiff repeatedly references this statute in a string citation. *See* SAC ¶¶ 48, 60, 75, 87. Section 78m is entitled "Periodical and other reports," and subsection (b)(2)(B) requires securities issuers to "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances" that four enumerated controls are in place. 15 U.S.C. § 78m(b)(2)(B). While this provision references the preparation of financial statements in accordance with generally accepted accounting principles, *see id.* § 78m(b)(2)(B)(ii)(I), it is facially neither an enumerated statute, an SEC rule or regulation, nor a law relating to shareholder fraud. On this issue, the *Wadler* case is instructive. In *Wadler*, the Ninth Circuit held that the FCPA, including its books-and-records provisions at § 78m(b)(2)(A), is not an SEC rule or regulation within the meaning of § 1514A. 916 F.3d at 1187. At the post-trial motions stage, the district court in *Wadler* rejected the defendants' argument that an alleged FCPA violation was not a protected activity within the meaning of § 1514A, reasoning that there is a corresponding SEC regulation and that the FCPA is an amendment to and codified within the Securities and Exchange Act of 1934. *Wadler v. Bio-Rad Labs., Inc.*, No. 15-cv-02356-JCS, 2017 U.S. Dist. LEXIS 71532, at *17–18 (N.D. Cal. May 10, 2017). On appeal the issue was limited to whether the statute was an SEC rule or regulation, which the Ninth Circuit easily resolved in the negative. *Wadler*, 916 F.3d at 1187. While the *Wadler* case only reviewed, as relevant here, the district court's inclusion of the FCPA in the jury

instruction on § 1514A's SEC rule or regulation category, the Ninth Circuit found that the error was not harmless, *see id.* at 1182, 1187, but also that a reasonable jury could nonetheless find that "the plaintiff reasonably believed he reported misconduct related to the books-and-records provisions—which unlike the anti-bribery provision of the FCPA, is also an SEC rule or regulation, and therefore falls under § 1514A." *La Belle v. Barclays Capital Inc.*, No. 19-CV-3800 (JPO), 2023 U.S. Dist. LEXIS 50770, at *37 (S.D.N.Y. Mar. 24, 2023) (citing *Wadler*, 916 F.3d at 1188). Presumably, then, it is the SEC's corresponding rule—not the FCPA—that is covered by § 1514A. This would apply with equal force to the FCPA's internal controls provision at § 78m(b)(2)(B).

To that end, the First Circuit, relying on *Wadler*, has recently indicated that reporting a reasonably believed violation of the FCPA, specifically § 78m(b)(2), (5), is not a protected activity under § 1514A. S*ee Baker v. Smith & Wesson, Inc.*, 40 F.4th 43, 48 (1st Cir. 2022) (finding on summary judgment that the FCPA is not an SEC rule or regulation and noting that the plaintiff "concedes that Section 78m(b)(2), (5) is not . . . a provision of Federal law relating to fraud against shareholder") (internal quotation marks and citations omitted).

Relatedly, Plaintiff argues in a footnote that SOX § 404, codified at 15 U.S.C. § 7262, is a federal law relating to fraud against shareholders. *See* Doc. No. 40 at 8 fn.3. The Court not persuaded by the cases Plaintiff relies on. While *Thomas v. Tyco Int'l Mgmt. Co.*, LLC, 262 F. Supp. 3d 1328, 1337 (S.D. Fla. 2017), citing *Wiggins v. ING U.S., Inc.*, No. 3:14-CV-01089 (JCH), 2015 U.S. Dist. LEXIS 167362, at *14 (D. Conn. Dec. 15, 2015), does seemingly stand for the proposition that a § 1514A claim may be based upon a SOX § 404 violation, the *Wiggins* case does not make such an explicit finding. Rather, *Wiggins* involved a string of laws and regulations, much like the ones in Plaintiff's Second Amended Complaint, and does not differentiate among them as providing the basis for whistleblower protection under § 1514A. *Wiggins*, 2015 U.S. Dist. LEXIS 167362, at *14. And in any event, both cases are devoid of explanation as to how SOX § 404 is a law relating to shareholder fraud.

The Ninth Circuit has made it clear that "rule or regulation" does not mean statute, and "law" does not mean rule or regulation. *See Wadler*, 916 F.3d at 1186. Therefore, for an unlisted statute to be covered by § 1514A, it must relate to shareholder fraud. SOX § 404, entitled "Management assessment of internal controls," grants the SEC authority to prescribe rules governing issuers' reporting of internal controls, requires management personnel make certifications regarding its internal controls in the issuer's annual reports, and provides and exemption from such a certification for small issuers. 15 U.S.C. § 7262(a)–(c). There appears to be nothing on the face of this statute to suggest that it relates to shareholder fraud. If Congress intended § 1514A to cover any violation of SOX, the Court assumes it would have stated as much.

Unfortunately, the issue of whether the FCPA and SOX § 404 are encompassed by § 1514A was not briefed. Nonetheless, it is apparent that Plaintiff has not pleaded that she engaged in a protected activity on these bases—she fails to plausibly plead that these statutes are laws relating to shareholder fraud. Accordingly, the Court **DISMISSES** Plaintiff's SOX's claim to the extent it is based upon her reporting of an alleged violation of these statutes.

### 3.   *Shareholder Fraud*

Title 15 of the United States Code, § 78j and 17 C.F.R. § 240.10b-5, known as Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, respectively, as well as section 17(a) of the Securities Act of 1933, prohibit fraud in the sale of securities. Plainly, each of these authorities is either a law pertaining to shareholder fraud or an SEC rule. Therefore, reporting a reasonably believed violation of these authorities is a protected activity under § 1514A.

In an attempt to untangle Plaintiff's pleading, Defendants identify seven categories of issues Plaintiff uncovered and complained of: (1) deficient lending, underwriting, and credit risk management controls; (2) inaccurate internal control certifications; (3) inaccurate loan loss reserves; (4) deficient anti money laundering ("AML") practices; (5) failure to account for operating lease schedules; (6) failure to disclose a new credit

product; and (7) inaccurate loan to value ratios.  *See* Doc. No. 36-1 at 16.  Plaintiff in opposition explains that she identified the following additional issues: (8) failure to monitor loans; (9) inadequate personnel; and (10) interference with and failure to address her reports and complaints.  *See* Doc. No. 40 at 17–18.

Based upon the Court's discussion *supra* Sections IV.B.1–2, securities fraud, whether unlawful under the Securities Act, the Exchange Act, or the SEC rules, is the only violation Plaintiff has adequately and plausibly identified in support of her SOX claim.

As was the case in *Erhart*, Plaintiff's pleading is imperfect and imprecise, but she nevertheless plausibly supports her reasonable belief that she complained of shareholder fraud.  With respect to all of the issues identified during all of her Portfolio reviews,[4] she pleads that she believed Axos Bank was inaccurately certifying that its internal controls were adequate and correct.  *See, e.g.*, SAC ¶¶ 33, 47–48, 59–60, 74–75.  Plaintiff also contends that these issues left the Bank at risk of holding risky loans, with inaccurate reserves for loan losses, over-exposed to risky borrowers, and unable to accurately state the value of its assets.  *See, e.g.*, SAC ¶¶ 33, 48, 75.  In one instance, Plaintiff asserts that she discovered Axos Bank had extended an outsized line of credit to a former Banc of California executive, and friend of several Bank executives, in a transaction that did not appear to be at arms-length, and that Axos Bank thereafter acquired a company owned by the former executive and took a write-down for $16 million in bad debt.  *See id.* ¶ 61.  Plaintiff also alleges that the excessive role of management in editing her reports created a risk that numbers on financial statements would not reflect her independent analysis but the self-interested conclusions of the Bank's management.  *See id.*  35, 60.

---

[4] While the parties separate their analyses for each category of issues, the Court declines to do so here.  The question of whether Plaintiff actually reasonably believed the issues, either in isolation or in totality, amounted to securities fraud, and whether such a belief was objectively reasonable, is a question for summary judgment or trial.  For the purpose of resolving Defendants' motion to dismiss, the Court need only determine whether Plaintiff has plausibly pleaded she engaged in a protected activity; whether Plaintiff's allegations, taken as true, support the reasonable inference that Defendants violated § 1514A.

True, Plaintiff does not specifically allege that she discovered inaccuracies or misstatements in Axos Bank's financial statements. However, it is plausible that Plaintiff reasonably believed all of the issues infected Axos Bank's financial statements and resulted in Axos Bank's financial statements being materially misleading and therefore amounting to shareholder fraud. *See, e.g.*, *id.* ¶¶ 34, 48, 60, 69, 75. Further, Plaintiff pleads that Axos Bank made a material misstatement to investors during its 1Q2021 earnings call regarding the Loan to Value ratios of its loans. *See id.* ¶¶ 77. She also alleges Axos Bank failed to report loan exceptions and a new credit product to investors. *See id.* ¶ 69. The Court therefore cannot say that Plaintiff's allegations are wholly untethered to shareholder fraud.

To plausibly state a SOX whistleblower claim, Plaintiff need not plead that Axos Bank actually engaged in securities fraud. Rather, she need only plead that she held a subjectively and objectively reasonable belief that the conduct she complained of amounted to such a violation. It is plausible that Plaintiff, a compliance, governance, and/or risk management officer, held a reasonable belief that these issues, in isolation or in totality, infected the accuracy of Axos Bank's reporting. And specifically in terms of Plaintiff's reasonable belief in intent to defraud, the Second Amended Complaint is rife with allegations that various persons at Axos Bank undertook efforts to silence Plaintiff or otherwise cover up her concerns, and Plaintiff alleges insider dealing, *see id.* ¶ 61.

Accordingly, accepting Plaintiff's factual allegations as true, the Court finds Plaintiff has plausibly pleaded she engaged in a protected activity. The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's SOX § 1514A whistleblower retaliation claim on this basis.

## C.   Claim 3: California's Equal Pay Act

Plaintiff's third cause of action is for violation of California's Equal Pay Act ("EPA"), Cal. Lab. Code § 1197.5, against Axos Bank and Axos Financial. The EPA provides that "[a]n employer shall not pay any of its employees at wage rates less than the rates paid to employees of the opposite sex for substantially similar work, when

viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions" unless certain exceptions apply.  Cal. Lab. Code § 1197.5(a).  The Court previously dismissed Plaintiff's EPA claim with leave to amend because she failed to factually allege that she was paid lower wages than her male counterparts with similar qualifications, seniority, and experience.  *See* Doc. No. 30 at 20–21.

Plaintiff again alleges that that she "is a woman who was paid wages lower than those paid to male employees of similar qualifications, seniority, and experience."  SAC ¶ 140.  She now alleges that her base salary was $88,000 per year, while a male employee, Mr. Anthony Maniscalco, was paid nearly twice as much.  *Id.* ¶ 142.  Plaintiff further contends that she and Mr. Maniscalco performed identical duties and held the same job title:

> Like Ms. Brinker, Mr. Maniscalco was responsible for reviewing the Bank's loan portfolios to examine, measure, monitor and report weaknesses and deficiencies with the Banks lending and risk management standards and practices. Like Ms. Brinker, Mr. Maniscalco performed reviews of the Bank's major lending portfolios and issued reports regarding credit risks in those portfolios and deficiencies in the Bank's processes and practices. Indeed Mr. Maniscalco was tasked with conducting the 2020 Warehouse Lending supplemental report alongside Ms. Brinker. In other words, Mr. Maniscalco performed the exact same job duties under the exact same circumstances as Ms. Brinker.
> Despite the fact that the[y] performed the same work under the same circumstances, Mr. Maniscalco was paid nearly twice as much as Ms. Brinker. Their training, skills and qualifications were substantively similar, making the pay disparity between them unjustifiable.

*Id.* ¶¶ 141–42.

Plaintiff also alleges that Mr. Maniscalco admitted to her that he lacked computer and technology skills and relied on other staff to supplement those job requirements for him.  *See id.* ¶ 93.

The Court finds that these allegations are sufficient to survive dismissal.  In support of their motion, Defendants identify several considerations missing from

Plaintiff's pleading, such as Plaintiff's and Mr. Maniscalco's job locations, qualifications, and length of tenure.  *See* Doc. No. 36-1.  But it is not apparent that such a deficiency warrants dismissal.  Plaintiff provides sufficient factual detail comparing her and Mr. Maniscalco's skill, effort, responsibility, and working conditions to support her claim that they perform substantially similar work.  And while a single comparator may not be enough to ultimately overcome summary judgment, or prove her claim at trial, *see Hein v. Or. Coll. of Educ.*, 718 F.2d 910, 918 (9th Cir. 1983) (noting on review of a summary judgment order that the Ninth Circuit "look[s] critically upon the use of a single comparator to make out a prima facie case . . . [but that] use of a single comparator is not clearly erroneous unless an appropriate comparator is wrongly excluded from comparison with the plaintiff"), it is sufficient at this stage to plausibly support her claim that she was paid less than males for substantially similar work, *see Allen v. Staples, Inc.*, 299 Cal. Rptr. 3d 779, 784 (Cal. Ct. App. 2022) (noting that an EPA plaintiff "may establish a prima facie case by showing that she was paid less in salary than a single male comparator").  Accordingly, the Court **DENIES** Defendants' motion on this basis.

**D.   Claims 4 – 6: Fair Employment and Housing Act**

Plaintiff's fourth, fifth, and sixth causes are pursuant to California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, *et seq.*, for gender discrimination, harassment, and retaliation, respectively.  In order to pursue FEHA claims in federal court, a plaintiff must first exhaust his or her administrative remedies. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001).  "It is the plaintiff's burden to plead and prove timely exhaustion of administrative remedies."  *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 902 (E.D. Cal. 2017); *see also Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345, 172 Cal. Rptr. 3d 686 (2014) (citing *Garcia v. Los Banos Unified School Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006)). Because Plaintiff previously failed to plead timely exhaustion, the Court dismissed her FEHA claims with leave to amend.  *See* Doc. No. 30 at 22.  Plaintiff now pleads that she exhausted her administrative remedies.  *See* SAC ¶ 10.  Namely, she contends that she

filed a complaint with the Department of Fair Employment and Housing ("DFEH") against Defendants and obtained a right-to-sue letter.  *See id.*

Plaintiff's DFEH complaint and right-to-sue letter, *see* Defs. Ex. A, are problematic for several reasons.  First, as Defendants point out, Plaintiff initiated this action on March 21, 2022, but did not obtain her right-to-sue letter until over six months later, on October 4, 2022.  Plaintiff in opposition argues that because she obtained her right-to-sue letter before she filed the Second Amended Complaint on January 17, 2023, she has satisfied the exhaustion requirement; Plaintiff believes that her amendment cured any previous untimely exhaustion.

The Ninth Circuit has not spoken on this issue.  It has, however, along with other circuits, suggested that a premature suit can be cured by a subsequent receipt of a right to sue letter—but at a minimum, only where the requirement is not jurisdictional, such as is the case with Title VII.  *See Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 n.1 (9th Cir. 1990); *see also Whitmore v. O'Connor Mgmt.*, 156 F.3d 796, 800 (8th Cir. 1998) (citing *Perkins v. Silverstein*, 939 F.2d 463, 471–72 (7th Cir. 1991)).  The only district court in this circuit to deal precisely with this issue at the dismissal stage held that a plaintiff could cure a premature FEHA claim by obtaining a right to sue letter after filing suit.  *See Greenly v. Sara Lee Corp.*, No. CIV. S-06-1775 WBS EFB, 2006 U.S. Dist. LEXIS 90868, at *25 (E.D. Cal. Dec. 13, 2006).  But in coming to this conclusion, the *Greenly* court seems to have relied on the incorrect legal principle that FEHA exhaustion is not a jurisdictional prerequisite.  *Id.* at *26.  It is well understood that unlike the exhaustion requirement in the Title VII context, which is a claims processing rule, *see Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *see also Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)), exhaustion of administrative remedies under California law, such as FEHA, "is a jurisdictional prerequisite to resort to the court."  *Johnson v. City of Loma Linda*, 99 Cal. Rptr. 2d 316, 322–23 (Cal. 2000) (quoting *Abelleira v. Dist. Court of Appeal*, 17 Cal. 2d 280, 293 (Cal. 1941) (internal quotation marks omitted).  As such,

1   while courts may look to decisions interpreting Title VII for assistance with construing

2   the substantively analogous provisions of FEHA, *see Rodriguez v. Airborne Express*, 265

3   F.3d 890, 896 (9th Cir. 2001); *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1173 (9th Cir.

4   2001); *see also State Dept. of Health Services v. Superior Court*, 6 Cal. Rptr. 3d 441, 449

5   (Cal. 2003) (explaining that the California Supreme Court has stated that "[o]nly when

6   FEHA provisions are similar to those in Title VII do we look to the federal courts'

7   interpretation of Title VII as an aid in construing the FEHA" and noting that "explicit

8   differences between federal law and the FEHA diminish the weight of the federal

9   precedents") (internal quotation marks and citations omitted), the Court will not rely on

10   Title VII's exhaustion principles in examining whether Plaintiff has timely exhausted her

11   FEHA claims.

12        At least one district court has concluded that obtaining a right to sue letter after

13   filing suit does not save a plaintiff's FEHA claims.  *See Ramirez-Castellanos v. Nugget*

14   *Mkt., Inc.*, No. 2:17-cv-01025-JAM-AC, 2020 U.S. Dist. LEXIS 93521, at *11-12 (E.D.

15   Cal. May 27, 2020) (granting summary judgment for the defendant on the plaintiffs'

16   FEHA claims where they initiated the action on May 16, 2017 and did not obtain a right

17   to sue letter from the DFEH until April 2018).  Because the *Ramirez-Castellanos* case

18   properly recognizes that FEHA exhaustion is a jurisdiction requirement, *see id.* at * 11,

19   the Court finds it instructive.  However, given that the issue in *Ramirez-Castellanos* was

20   resolved at the summary judgment stage, and that the jurisdictional requirement does not

21   implicate the Court's subject matter jurisdiction, *Rodriguez v. Airborne Express*, 265

22   F.3d 890, 900 (9th Cir. 2001), it is not entirely clear whether the Court can resolve this

23   issue at the motion to dismiss stage.

24        Plaintiff nonetheless argues that the Court's granting of leave to amend implicitly

25   endorsed her position that her prior failure to obtain a right-to-sue letter could be saved

26   by subsequent amendment.  Setting aside the fact that the Court made no such

27   representation, Plaintiff fails to recognize that the defect was her failure to plead *timely*

28   exhaustion of her administrative remedies.  To that end, Plaintiff again fails to plead that

she timely exhausted her administrative remedies and for that reason, her claims are subject to dismissal.

Additionally, it is apparent that Plaintiff did not timely exhaust her administrative remedies and therefore cannot plead timely exhaustion. Based upon the allegations in the Second Amended Complaint, the last alleged adverse action occurred when Plaintiff was terminated on January 5, 2021.[5] Therefore, Plaintiff had until January 5, 2022 to file her DFEH complaint. *See* Cal. Gov't Code § 12960(d) (providing that a complaint with the DFEH must be filed within "one year from the date upon which the alleged unlawful practice . . . occurred"). Plaintiff did not file her DFEH complaint until nine months later, on October 4, 2022. Defs. Ex. A. Therefore, Plaintiff did not timely exhaust her administrative remedies.

Because Plaintiff fails to plead timely exhaustion and it is apparent that she cannot cure this defect, the Court **DISMISSES** Plaintiff's FEHA claims without leave to amend.

**E.    Claim 8: Unlawful Business Practices**

By way of her eighth cause of action, Plaintiff pleads a violation of the unlawful prong[6] of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* against Defendants Axos Bank and Axos Financial. The unlawful prong "is essentially an incorporation-by-reference provision." *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 165 F. Supp. 3d 937, 952 (S.D. Cal. 2016). Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful

---

[5] In Plaintiff's DFEH complaint, she seemingly identifies October 4, 2022, as the date of her complained adverse actions. *See* Defs. Ex. A. Interestingly, this is also the same date she submitted her DFEH complaint. *See id.* Plaintiff was terminated on January 5, 2021, and therefore Defendants presumably could not have taken any adverse employment action against her after that date. Regardless, the SAC only identifies adverse actions up through Plaintiff's termination date. Accordingly, Plaintiff's reference to October 4, 2022 in her DFEH complaint does not cure her untimely exhaustion prior to initiating this action.

[6] While Defendants also argue that Plaintiff fails to plead the unfair and fraudulent prongs of the UCL, *see* Doc. No. 36-1 at 28, a review of Plaintiff's Second Amended Complaint and her opposition reveal that she does not intend to pursue these theories of UCL liability.

practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 561 (Cal. 1999) (internal quotations omitted).  As such, "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Obesity Research Inst.*, LLC, 165 F. Supp. 3d at 953 (quoting *Aleksick v. 7-Eleven, Inc.*, 140 Cal. Rptr. 3d 796, 801 (Cal. Ct. App. 2012)).

Defendants argue that Plaintiff has failed to plead the unlawful prong of the UCL because it is wholly predicated on her EPA claim, which Defendants argue must be dismissed.  *See* Doc. No. 36-1 at 27–28.  However, because the Court finds that Plaintiff has stated a claim for violation of the EPA, her UCL claim survives dismissal.

Defendants also argue that Plaintiff fails to plead a remedy under the UCL because the only monetary relief available under the UCL is restitution and that Plaintiff fails to plead facts showing she has any ownership interest in lost money or property.  Doc. No. 36-1 at 28–29.  Plaintiff asserts in opposition that she is legally entitled to be paid, and therefore has an ownership interest in being paid, the same amount for her work as a man in a comparable position.  *See* Doc. No. 40 at 22.

Defendants are correct that the remedies for violation of the UCL are limited to injunctive relief and restitution—a plaintiff may not recover monetary damages.  *See* Cal. Bus. & Prof. Code § 17203; *see also In re Tobacco II Cases*, 93 Cal. Rptr. 3d 559, 569 (Cal. 2009) ("A UCL action is equitable in nature; damages cannot be recovered. . . . We have stated under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.") (internal citations omitted); *Cortez v. Purolator Air Filtration Prods. Co.*, 96 Cal. Rptr. 2d 518, 525 (Cal. 2000); *Martinez v. Ford Motor Co.*, No. 22-cv-1082-MMA (BGS), 2023 U.S. Dist. LEXIS 67165, at *18 (S.D. Cal. Apr. 17, 2023).  Here, Plaintiff does not request injunctive relief, but she does seek restitution.  *See* SAC ¶ 180.

Whether recovery of the difference between Plaintiff's wages and a comparable man's wages can be considered restitution—*i.e.*, whether Plaintiff has an interest in the unpaid amounts such that it can be considered her property, *cf. Cortez*, 96 Cal. Rptr. 2d at

528—is an issue best left for summary judgment.  Accordingly, Court **DENIES** Defendants' motion to dismiss on this basis without prejudice to Defendants raising this argument again at summary judgment.

## V. CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.  In particular, the Court **DISMISSES** all claims against Axos Financial, Plaintiff's SOX § 1514A whistleblower retaliation claim to the extent it is premised upon a believed violation of SEC Rules 240.13a-14 and 240.13a-15, the FCPA, and SOX § 404, and Plaintiff's FEHA claims.  To the extent Plaintiff can cure the defects identified above consistent with this Order and the law cited herein, dismissal is with leave to amend.  If Plaintiff wishes to file a Third Amended Complaint, she must do so on or before **August 3, 2023**.

**IT IS SO ORDERED**.

Dated:  July 13, 2023

HON. MICHAEL M. ANELLO
United States District Judge