UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JENNIFER BREAR BRINKER,

Plaintiff,

v.

AXOS BANK, et al.,

Defendants.

JOHN TOLLA, et al.,

Counter-Claimants,

v.

JENNIFER BREAR BRINKER,

Counter-Defendant.

Case No.:  22-cv-0386-MMA-DDL

**ORDER OVERRULING PLAINTIFF'S RULE 72 OBJECTION**

[Doc. No. 173]

On October 31, 2024, Magistrate Judge David D. Leshner issued a Discovery Order denying in part Plaintiff Jennifer Brear Brinker's motion to compel.  *See* Doc. No. 164 ("Discovery Order").  Plaintiff now objects to the Discovery Order to the extent Judge Leshner denied Plaintiff's request that the Court compel further testimony from Eshel Bar-Adon regarding the factual and legal basis for Defendants Axos Bank's and John Tolla's (collectively, "Defendants") counterclaims.  Doc. No. 173.  Defendants filed

a response in opposition to the objection, to which Plaintiff replied.  *See* Doc. Nos. 176, 180.  For the reasons set forth below, the Court **OVERRULES** Plaintiff's objection.

# I. BACKGROUND

The record before the Court reflects the following.  On August 2, 2023, Plaintiff filed a third amended complaint, which is the operative complaint, asserting five claims for: (1) whistleblower retaliation in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A; (2) whistleblower retaliation in violation of California Labor Code § 1102.5; (3) violation of California's Equal Pay Act, Cal. Lab. Code § 1197.5; (4) wrongful termination in violation of public policy; and (5) unlawful business practices, Cal. Bus. & Prof. Code § 17200 *et seq.*  Doc. No. 44 ("Third Amended Complaint" or "TAC").  The facts relevant to and supporting her claims have never substantively changed among her four pleadings.  Relevant here, the factual basis for her retaliation claims is that Defendants "retaliated against and wrongfully discharged" her after she made oral and written complaints based upon her belief that Axos Bank discriminated against women and had violated numerous federal statutes relating to financial controls and reporting.  TAC ¶ 119.

On November 21, 2023, Defendants filed their answer to the Third Amended Complaint and asserted seven counterclaims against Plaintiff.  Doc. No. 50.  Underlying all seven of Defendants' counterclaims is their core factual allegation that Plaintiff improperly took, used, and remains in possession of confidential customer information. *See, e.g.*, *id.* ¶ 11–16.

In March 2024, Plaintiff responded to one of Defendants' interrogatories— Interrogatory No. 8—asking her to "Identify, including by date, each act of RETALIATION YOU allegedly suffered."  Doc. No. 176-4 ("Def. Ex. C") at 3.[1] Plaintiff identified four allegedly adverse actions: (1) "she was no longer permitted to

---

[1] Unless otherwise noted, all citations include the pagination assigned by the CM/ECF system.

attend meetings of the Board of Directors Committee responsible for overseeing ICR and Compliance[;]" (2) she "was not able to obtain other jobs within the bank, despite repeated attempts to transfer within Axos[;]" (3) she was "locked out" of a database in 2020 and denied access to records while other team members retained access; and (4) she was terminated on January 5, 2021.  *Id.* at 4.

On October 21, 2024, Plaintiff deposed Mr. Bar-Adon, who is, or was, Axos Bank's Chief Legal Officer.  Doc. No. 176-6 ("Def. Ex. E").[2]  During his deposition, Plaintiff's counsel, Mr. Robert J. King, asked Mr. Bar-Adon: "when you authorized bringing the lawsuit against Ms. Brinker, did you believe that Axos's claims were meritorious?"  Def. Ex. E at 19:2–5.  Defendants' counsel, Ms. Polly Towill, objected to the question on the basis that it called for attorney-client privileged information and attorney work product and instructed Mr. Bar-Adon not to answer.  Mr. King then clarified: "Just so I'm clear, is it Axos's contention that there is a reasonable basis in fact or law for its counterclaims against Ms. Brinker?" and Mr. Bar-Adon responded "Yes." *Id.* at 19:11–15.  Mr. King then asked for "the basis for that contention" and Ms. Towill again objected and instructed Mr. Bar-Adon not to answer.  *Id.* at 19:19–23.

Two days later, on October 23, 2024, which was also two days before the October 25th fact discovery cutoff, *see* Doc. No. 99, Plaintiff served supplemental interrogatory responses, in which she amended her response to Interrogatory No. 8 to add the following narrative to the above identified four acts of alleged retaliation:

> Ms. Brinker was fired in the midst of her efforts to complete a report that highlighted significant issues in the Bank's Anti-Money-Laundering practices, repeat internal control deficiencies, and its failure to accurately report necessary information to its Board of Directors, among other serious issues. Ms. Brinker's colleagues, who supported her findings, were also fired, their silence purchased with minimal severance payments that bound them to secrecy and enticed them to waive their claims against the Bank.

---

[2] All transcript citations refer to the pagination assigned by the reporter.

When Ms. Brinker refused to agree to the terms of the Bank's proposed severance, many of which were illegal on their face, the Bank sought to intimidate her into submission. The Bank then filed an arbitration against Ms. Brinker for taking Bank documents to provide to regulators and seeking to prohibit her from sharing any information about Axos with "*any* third party." The arbitration was eventually removed to Federal Court and the Bank asserted various counterclaims in this lawsuit based on substantially the same conduct: that Ms. Brinker had misappropriated confidential, proprietary, or trade secret information from Axos. The arbitration and counterclaims in this action are without merit, lack a reasonable basis in fact or law, and were brought with an improper motive to retaliate against Ms. Brinker for raising her protected complaints, filing her suit, and/or deter future whistleblowers and the claims. *Darveau v. Detecon*, 515 F.3d 334, 341 (4th Cir. 2008).

Indeed, on September 2, 2024, Axos admitted in sworn discovery responses that it had no evidence showing that Ms. Brinker provided any confidential information to anyone other than her actual or potential attorneys and that none of its computer systems were damaged by any of her actions.

Furthermore, deposition and hearing transcripts from the arbitration proceeding of *Barbara Foster vs. Axos Bank and Axos Financial, Inc.*, Judicate West Case No. A275925-56 show that Eshel Bar-Adon and Mary Ellen Ciafardini emailed themselves Axos information to their personal e-mail addresses—in violation of the Bank's computer use and confidentiality policies—further supporting Plaintiff's argument that the Bank filed counterclaims against Ms. Brinker with the improper motive to retaliate against her.

Additionally, in his deposition, John Tolla testified that he likely received automated notifications each time Ms. Brinker sent emails to her personal email. Notably, the Bank did not file counterclaims against Ms. Brinker until *after* she made her protected complaints.

Doc. No. 176-5 ("Def. Ex. D").

On October 29, 2024, Plaintiff filed a motion to compel, asking among other things that the Court compel Mr. Bar-Adon to sit for another deposition and order him to answer questions relating to Defendants' legal and factual basis for asserting their counterclaims. Doc. No. 159. Judge Leshner denied this portion of Plaintiff's motion, reasoning that Plaintiff failed to meet her burden of demonstrating that this information was relevant to a claim or defense and proportional to the needs of the case. Discovery Order at 4. Plaintiff now objects to that portion of the Discovery Order. Doc. No. 173.

## II. D<small>ISCUSSION</small>

A Rule[3] 72 objection is not a vehicle to simply reargue discovery issues and hope for a different result. *See Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (explaining that pretrial orders of a magistrate judge "are not subject to *de novo* determination"). And here, the Court is not left with a definite or firm conviction that a mistake has been committed. The bounds of discovery are broad, but they are not limitless. On the eve of the close of fact discovery, the parties raised a privilege dispute and Judge Leshner engaged in the threshold inquiry of whether the disputed line of questioning was within the proper bounds of discovery at all. It appears he found the boundary here as turning on what Plaintiff sufficiently set forth in her pleadings: Plaintiff could pursue limited discovery into Defendants' basis for bringing their arbitration claims[4] because, at the very least, the arbitration occurred before and was referenced in the pleadings; Plaintiff could not pursue her line of questioning aimed at Defendants' basis for bringing the counterclaims in this action because she did not plead that the filing of counterclaims was an act of retaliation and she did not amend her complaint to include these allegations. Having reviewed the entire record in this case, the Court is not left with a definite and firm conviction that this approach or ruling was in error.

Plaintiff has conceded, as she must, that reference to Defendants' counterclaims is absent from her pleadings. From a purely chronological standpoint, Plaintiff's August 2023 complaint could not have included allegations of actions or events that did not occur until November 2023, which was after she filed her pleading. And Plaintiff never amended her complaint in response to Defendants' filing of counterclaims. Plaintiff does not persuasively explain how her retaliation claims as pleaded could have been premised upon an adverse action not yet taken.

---

[3] All "Rule" references are to the Federal Rules of Civil Procedure.

[4] On February 5, 2021, Axos Bank filed a demand for arbitration asserting four claims based upon the allegation that Plaintiff had taken, misused, and remained in possession of confidential information (the "Demand for Arbitration"). Doc. No. 176-2 ("Def. Ex. A") ¶¶ 12–18.

1    Seemingly recognizing this, Plaintiff instead attempts to characterize her retaliation

2    claims as including both the arbitration and these counterclaims within the umbrella of

3    "initiation of litigation," Doc. No. 172 ("Oct. Tr.") at 17:9–18:1.  In her Third Amended

4    Complaint, Plaintiff references the fact that Axos Bank had initiated the arbitration only

5    twice, TAC ¶¶ 5, 101, and only as a factual matter.  Further, apart from a request for

6    attorney's fees and costs, *id.* ¶ 130, the word "litigation" is used only once in the Third

7    Amended Complaint, *id.* ¶ 100.  A deeper review of her pleading further calls into

8    question whether Plaintiff actually asserted the theory that her retaliation claims are based

9    upon Defendants' threat to initiate, or initiation of, litigation.  Retaliation claims under

10   federal and California law require, among other things, that a plaintiff prove that she

11   suffered an adverse employment action.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989,

12   996 (9th Cir. 2009); *Lawson v. PPG Architectural Finishes, Inc.*, 289 Cal. Rptr. 3d 572,

13   577 (Cal. 2022).  None of Plaintiff's pleadings are a model of clarity in terms of

14   identifying the discreet adverse employment actions she allegedly suffered.  In several

15   instances, she alleges she "faced consistent hostility from management." TAC ¶¶ 3, 74–

16   75, that she was fired, *id.* ¶ 4, and that Axos Bank attempted to intimidate her into

17   agreeing to accept a settlement and sign a release of claims, *id.* ¶¶ 5, 97–99.  The asserted

18   intimidation efforts include sending her a cease-and-desist letter "on January 12 that

19   threatened litigation." *Id.* ¶ 100.  Plaintiff also alleges that Axos Bank "subsequently"

20   pursued claims against her in arbitration "for taking Bank documents to provide to

21   regulators, seeking to prohibit her from sharing any information about Axos with 'any

22   third party.'" *Id.* ¶¶ 5, 101.

23   Following her factual narrative, in support of her SOX retaliation claim she asserts

24   that Axos Bank "harassed, threatened, retaliated against and wrongfully discharged

25   Plaintiff" because of her protected activities. *Id.* ¶¶ 119.  And in support of her California

26   Labor Code retaliation claim, Plaintiff pleads that Axos Bank retaliated against her "by

27   taking away her job responsibilities, denying her meaningful promotions and/or transfers,

28   harassing her, and terminating her employment." *Id.* ¶ 127.

Thus, Plaintiff never actually alleges that Axos Bank retaliated against her by initiating the arbitration. Despite passing reference to the cease-and-desist letter and two references to the fact that Defendants had previously initiated arbitration, she certainly does not clearly assert that the adverse actions she faced included litigation. As such, it appears to the undersigned that Judge Leshner's determination that, for the purpose of discovery, Plaintiff's retaliation claims include Axos Bank's initiation of arbitration against her is already a sufficiently liberal interpretation of the pleadings in Plaintiff's favor, assuming she is even entitled to the benefit of the motion to strike standard as the moving party in this discovery dispute. Doc. No. 173 at 10–11 (arguing that her allegations should be construed "in the light most favorable to the pleader"); *see also RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005) (explaining that when ruling on a Rule 12(f) motion to strike, courts "must view the pleading under attack in the light most favorable to the pleader").

Two other facts are especially noteworthy on this point. First, in her complaint to the Department of Fair Employment and Housing, which she filed on October 4, 2022 (eight months after Defendants filed their Demand for Arbitration), Plaintiff neglected to mention that she perceived actual or threatened litigation as an adverse employment action. Instead, she explicitly stated that she believed she experienced retaliation because after she "reported or resisted any form of discrimination or harassment" she "was terminated, denied hire or promotion." Doc. No. 23-2 at 11. Second, but not least important, Plaintiff did not identify either the arbitration, counterclaims, or Axos Bank's pursuit of litigation in general as an act of retaliation by way of interrogatory response until October 23, 2024, two days after deposing Mr. Bar-Adon, and two days before the fact discovery cutoff. Thus, but for her October 21 questioning of Mr. Bar-Adon and October 23 supplement to Interrogatory No. 8, Plaintiff points to nothing during the nearly eight months of discovery that would sufficiently indicate that she herself believed her claims included this theory and that she pursued discovery relevant to this theory, accordingly.

For all of these reasons, the Court finds that Plaintiff's position that Defendants had sufficient notice that her retaliation claims included Defendants' "threat of further and continued litigation against her" by way of her pleadings or discovery is belied by the record. *See* Doc. No. 173 at 10; *id.* at 11 (arguing "[t]hat Plaintiff did not amend her TAC to allege that Axos' subsequent filing of its Counterclaim in this action constituted an act of retaliation is not dispositive given that Defendants had notice that Ms. Brinker viewed such action as retaliation").

Plaintiff further argues without any legal support or authority that she need not plead each specific act of retaliation. Even assuming that is true for discovery purposes, she does not persuasively argue that her failure to do so here should not be fatal. And as explained above, the Court finds no error in Judge Leshner's ruling that it was. Further, even assuming Plaintiff is correct that "[p]ost-employment litigation against a whistleblower constitutes an illegal act of retaliation under SOX," Doc. No. 173 at 7, the Court reiterates that Plaintiff simply does not plead that the act by Defendants of filing the counterclaims in this action was an act of retaliation and she never amended her complaint to include this alleged act of retaliation after Defendants filed their answer and countercomplaint. And, contrary to her contention, she does not allege a "pattern and practice by Axos Bank to engage in bad faith litigation conduct." *Id.* at 12. For all of these reasons as well, the Court is not convinced that Judge Leshner erred in concluding that the requested discovery was not relevant to her claims or proportional to the needs of the case.

Next, Plaintiff argues that this discovery is relevant to her affirmative defense of unclean hands. Doc. No. 173 at 12. However, it appears that Plaintiff never raised this argument before Judge Leshner. *See generally* Doc. No. 159; Oct. Tr. It is not appropriate to claim error under Rule 72(a) based upon a Magistrate Judge's failure to accept an argument never made. *See In re Midland Credit Mgmt.*, No. 11-md-2286-MMA-MDD, 2020 U.S. Dist. LEXIS 207256, at *56 (S.D. Cal. Nov. 5, 2020) ("Motions to reconsider a magistrate judge's ruling 'are not the place for parties to make new

arguments not raised in their original briefs.'") (quoting *Hendon v. Baroya*, No. 05-cv-01247-AWI-GSA-PC, 2012 U.S. Dist. LEXIS 40158, at *2–3 (E.D. Cal. Mar. 23, 2012)). In any event, the Court is not moved.  Responding to Defendants' claims that Plaintiff improperly took, used, and retained confidential customer information after she was terminated, Plaintiff pleads the unclean hands affirmative defense. *See* Doc. No. 54 at 10.  This defense requires, among other things, that Plaintiff demonstrate a willful act by Defendants concerning their own claims or that Defendants acted in bad faith relative to the subject matter of their pleading.  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15 (1945).  The contention that Defendants improperly pursued litigation as a form of retaliation, or more specifically, that Defendants' filing of counterclaims in this action is an adverse employment action, is wholly unrelated to the "controversy in issue," *id.* at 815, in Defendants' pleading of whether Plaintiff improperly took, misused, and remains in possession of confidential customer information.  Thus, Judge Leshner did not err in determining that discovery into whether Defendants had a good faith basis for bringing their counterclaims is not relevant to this or any other defense.

Finally, Plaintiff contends that the counterclaims are so similar to the arbitration claims that they are essentially identical and thus that Judge Leshner's "ruling as to additional discovery into Axos' basis for its Arbitration Demand against Plaintiff necessitates the granting of the Order as to the Counterclaims."  Doc. No. 173 at 14.  As Judge Leshner recognized, Defendants asserted three new counterclaims two-and-a-half years after they filed their Demand for Arbitration.  Doc. No. 164 at 4.  The Court finds no clear error in Judge Leshner's determination that for this reason, the arbitration claims and counterclaims are not so similar such that the inclusion of the former within the scope of this case as pleaded for the purpose of determining the bounds of discovery necessitates including the latter.

Moreover, even if the Court accepts Plaintiff's position that Defendants' arbitration claims and counterclaims are essentially identical, then the requested discovery would be

22-cv-0386-MMA-DDL

duplicative of what Judge Leshner already ordered and what Plaintiff was permitted to seek.  Discovery Order at 4–5 (granting Plaintiff's motion to compel further deposition testimony from Mr. Bar-Adon regarding his good faith belief as to the legal basis for the Demand for Arbitration).  That is to say, if as Plaintiff contends "there is no substantial difference between allowing Plaintiff to seek discovery into Axos' basis for its Arbitration Demand and allowing Plaintiff to seek discovery into Axos' basis for its Counterclaims (which significantly overlap)," Doc. No. 173 at 14, then there should be no substantial difference between Mr. Bar-Adon's basis for his good faith belief in bringing them either.  And Plaintiff has already been permitted to seek and has obtained discovery as to the former.  Doc. No. 176-1 ¶ 9.  For that reason, the Court finds that Judge Leshner did not err in determining that the requested discovery was not proportional to the needs of the case.

### III. CONCLUSION

Based upon the foregoing, the Court **OVERRULES** Plaintiff's Rule 72 Objection. Doc. No. 173.

**IT IS SO ORDERED**.

Dated:  January 22, 2025

HON. MICHAEL M. ANELLO
United States District Judge